IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NEBRASKA HIGH SCHOOL PRESS ASSOCIATION, INC., a Nebraska nonprofit corporation; and MARCUS PENNELL,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>NORTHWEST PUBLIC SCHOOL DISTRICT, a Political Subdivision; JEFFREY EDWARDS, in his individual capacity,<br><br>　　　　Defendants. | Case No. 4:23-cv-3043 |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Andre R. Barry, #22505
Lily Amare, #25735
Jessica K. Robinson, #27380
Cline Williams Wright
 Johnson & Oldfather, L.L.P.
1900 U.S. Bank Building
233 South 13th Street
Lincoln, NE 68508
(402) 474-6900
abarry@clinewilliams.com
lamare@clinewilliams.com

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................3
II. PLAINTIFFS' ALLEGATIONS .........................................................................4
   A. BACKGROUND...........................................................................................4
   B. PENNELL'S WORK ON THE *VIKING SAGA* AS A SENIOR AT GRAND ISLAND NORTHWEST ..................................................................5
   C. EVENTS AFTER THE 2021-22 SCHOOL YEAR ....................................6
III. STANDARD OF REVIEW..................................................................................7
IV. ARGUMENT ........................................................................................................8
   A. PENNELL LACKS STANDING TO SUE OVER ACTIONS HIS FORMER SCHOOL TOOK AFTER HE GRADUATED..................................................................8
   B. PENNELL HAS NOT PLAUSIBLY ALLEGED VIEWPOINT DISCRIMINATION. ......10
   C. PENNELL FAILED TO STATE A CLAIM OF FIRST AMENDMENT RETALIATION. 12
   D. PLAINTIFFS' THIRD CLAIM IS LIKEWISE SUBJECT TO DISMISSAL. ...............13
   E. DR. EDWARDS IS PROTECTED BY QUALIFIED IMMUNITY. ............................17
   F. PLAINTIFFS HAVE FAILED TO PLEAD SPECIAL DAMAGES............................18
V. CONCLUSION...................................................................................................19

Defendants Northwest Public School District, a Political Subdivision ("Grand Island Northwest"), and Jeffrey Edwards, in his individual capacity ("Dr. Edwards"), (collectively, "Defendants"), respectfully submit this Brief in support of their Motion to Dismiss the Complaint in this action.

## I.   INTRODUCTION

Plaintiffs are a former student of Grand Island Northwest and a press association whose members consist of school journalism teachers and advisors. They allege that Defendants violated their First Amendment rights when they "eliminated" Grand Island Northwest High School's newspaper, the *Viking Saga*, and the school's Newspaper class. [Filing No. 1, ¶ 1.] The former student, Marcus Pennell ("Pennell") alleges that Defendants engaged in viewpoint discrimination and retaliated against him in violation of his First Amendment rights and that they have violated his right to receive information in the *Viking Saga*. The Nebraska High School Press Association (the "Press Association") joins in this third claim (right to receive information).

Plaintiffs' claims are subject to dismissal for various reasons. First, Pennell was not a student at Grand Island Northwest at the time of the Defendants' alleged conduct. For this reason, among others, Pennell lacks standing to sue and cannot show conduct that has objectively chilled his exercise of free speech. Second, contrary to Plaintiffs' allegations, the *Viking Saga* was not "eliminated"; it was published three times during the second semester of the 2022-23 school year. For this reason, among others, neither Plaintiff has standing to sue on their right-to-receive information claim. Finally, in light of the broad discretion accorded to school administrators where free speech and curriculum intersect, Plaintiffs' claims against Dr. Edwards in his individual capacity are barred by qualified immunity. The Complaint is subject to dismissal in its entirety.

3

## II. PLAINTIFFS' ALLEGATIONS

The allegations in the Complaint are taken as true for purposes of the Motion to Dismiss, even though Defendants dispute many of them:

### A. Background

1. Grand Island Northwest is a political subdivision in Grand Island, Nebraska, organized and operating under the laws of the State of Nebraska. [Filing No. 1, ¶ 5.]

2. Dr. Edwards is a resident of Nebraska and the superintendent of Grand Island Northwest. [Filing No. 1, ¶ 6.]

3. Pennell is a current resident of Omaha, Nebraska, and former student of Grand Island Northwest High School, one of the attendance centers of Grand Island Northwest. [Filing No. 1, ¶ 4.]

4. Pennell was a senior during the 2021-22 school year and graduated on May 15, 2022. [Filing No. 1, ¶ 4; Declaration of Jeffrey Edwards ("Edwards Dec.") ¶ 7 & Ex. D.]

5. The Press Association is a nonprofit, member-based organization incorporated in the State of Nebraska. It supports and promotes high school journalism. [Filing No. 1, ¶ 3.]

6. The Press Association's members include journalism teachers and student publication advisors from across Nebraska high schools. [Filing No. 1, ¶ 3.]

7. Grand Island Northwest offers the Newspaper class to its students as part of its educational curriculum. [Filing No. 1, ¶¶ 19–21.]

8. The *Viking Saga* is the official student publication of Grand Island Northwest High School. [Filing No. 1, ¶¶ 10–13.] The *Viking Saga* is "designed to support student speech without regard to viewpoint." [Filing No. 1, ¶ 43.]

4

9. The *Viking Saga* staff was and is made up of the student members of the Newspaper class and the class's instructor. [Filing No. 1, ¶¶ 11, 12, 17.] Accordingly, the students enrolled in the Newspaper class serve as the student staff of the *Viking Saga*. [Filing No. 1, ¶ 18.]

10. During the 2021-22 school year, the *Viking Saga* was advised by Ms. Kirsten Gilliland, a teacher employed by the School District and teaching the Newspaper class. [Filing No. 1, ¶ 11.] Ms. Gilliland was a member of the Press Association. [Id.]

**B.  Pennell's Work on the *Viking Saga* as a Senior at Grand Island Northwest**

11. In the 2021-22 school year, Pennell was enrolled in the Newspaper class and served as one of the student staff of the *Viking Saga*. [Filing No. 1, ¶ 44.]

12. On or about March 31, 2022, the School District required students to publish articles in the *Viking Saga* using their official names provided in the Grand Island Northwest student information system called PowerSchool. [Filing No. 1, ¶ 38.]

13. On or about April of 2022, Pennell wrote an editorial about the Florida Parental Rights in Education Act for the June 2022 edition of the *Viking Saga* ("June 2022 edition"). [Filing No 1, ¶¶ 44, 48.]

14. The June 2022 edition of the *Viking Saga* was published on May 16, 2022, and was made available in print and digital media. [Filing No 1, ¶ 48.] The print version was distributed by hand on the high school campus. [Filing No. 1, ¶ 27.]

15. Pennell's editorial on the topic of the Florida Parental Rights in Education Act was featured in the June 2022 edition. [Id.]

16. In addition, the June 2022 edition included other students' articles on the topics of gender identity and history of LGBTQ+ rights. [Filing No. 1, ¶¶ 48, 49.]

17. On May 15, 2022, Pennell graduated from Grand Island Northwest High School. [Filing No. 1, ¶ 71; Edwards Dec. ¶ 7 & Ex. D.]

18. To date, the June 2022 edition continues to be available digitally. [Edwards Dec. ¶ 5].

### C. Events After The 2021-22 School Year

19. On August 31, 2022, Defendants communicated to parents and guardians that the Newspaper class was not going to be offered during the first semester of the 2022-23 school year but might be added in the future depending on student interest, and that the *Viking Saga* was "temporarily paused." [Filing No. 1, Ex. 10 at pp. 87.]

20. Defendants have publicly disputed the allegation that they cancelled the *Viking Saga* because of the one or two articles contained in the June 2022 edition. [Id.]

21. The Newspaper class was offered in the second semester of the 2022-23 school year and the *Viking Saga* resumed its objective of serving as the official student publication. [Filing No. 1, at ¶ 68; Edwards Dec. ¶ 6 & Ex. A, B, C.]

22. In the 2022-23 school year, the *Viking Saga* published three issues. These issues are accessible digitally, directly from the School District's website. [Id.]

23. The Complaint contains no allegations that the Newspaper class will not be offered during the 2023-24 school year.

6

### III. STANDARD OF REVIEW

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Perez v. Does 1-10*, 931 F.3d 641, 646 (8th Cir. 2019); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Therefore, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

When considering a motion to dismiss, the Court must ordinarily confine its analysis to the four corners of the complaint and ignore all materials outside the pleadings. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). However, the Court may consider "some materials that are part of the public record or do not contradict the complaint . . . as well as materials that are necessarily embraced by the pleadings." *Id.* "Documents necessarily embraced by the pleadings include those whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Smith v. Cent. Platte Nat. Res. Dist.*, No. 4:14-CV-3230, 2017 WL 6813133, at *2 (D. Neb. Oct. 26, 2017), *aff'd,* 735 F. App'x 227 (8th Cir. 2018).

Accordingly, in the present case, the *Viking Saga*'s digital publication and Grand Island Northwest's academic calendars for school years 2021-22 and 2022-23 are all documents that the Court can and should consider in connection with the Motion to Dismiss.

7

## IV.  ARGUMENT

### A.  Pennell lacks standing to sue over actions his former school took after he graduated.

The Supreme Court "has long recognized that local school boards have broad discretion in the management of school affairs." *Board of Educ., Island Trees Union Free School Dist. No. 26 v. Pico*, 457 U.S. 853, 863 (1982). Indeed, "[l]ocal authorities are the principal policymakers for the public schools. Thus, school boards are accorded comprehensive powers and substantial discretion to discharge the important tasks entrusted to them." *Pratt v. Indep. Sch. Dist. No. 831, Forest Lake, Minn.*, 670 F.2d 771, 775 (8th Cir. 1982). "First Amendment rights, applied in light of the special characteristics of the school environment, are available to . . . **students**." *Island Trees*, 457 U.S. at 866 (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969)) (emphasis added).

Courts have been clear as to the limited class of persons who have standing to challenge school curricula decisions: students actually affected by the curriculum selections, the parents of those students, and teachers of the curriculum. These limits are reflected in numerous decisions dismissing plaintiffs who do not fall into these categories from suits alleging unconstitutional removal of materials from high school libraries. *See, e.g.*, *Salvail v. Nashua Bd. of Educ.*, 469 F. Supp. 1269, 1276 n.6 (D.N.H. 1979) (dismissing plaintiff "concerned residents and taxpayers" because they lacked standing to challenge the removal of literary material from a public high school library); *Case v. Unified Sch. Dist. No. 233*, 908 F. Supp. 864, 873 (D. Kans. 1995) ("Former students no longer have a cognizable interest in the case or controversy and their injuries would not be redressed by the return of the book to the libraries."); *Right to Read Defense Comm. of Chelsea v. Sch. Comm. of City of Chelsea*, 454 F. Supp. 703, 704

n.2 (D. Mass. 1978) (dismissing several plaintiffs from suit regarding removal of materials from high school library because they lacked "a sufficient stake in the outcome of the litigation to warrant standing").

Specific to his First and Second claims of First Amendment violation, Pennell must "establish that he would like to engage in arguably protected speech, but that he is chilled from doing so" as a result of the Defendants' activities. *281 Care Comm.*, 638 F.3d at 627. "A chilling effect on speech protected by the First Amendment can constitute an injury in fact, but [a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Balogh v. Lombardi*, 816 F.3d 536, 541–42 (8th Cir. 2016) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 417 (2013)). *See also Miller v. City of St. Paul*, 823 F.3d 503, 506 (8th Cir. 2016) (holding same).

Pennell lacks standing to assert his First and Second Claims because he had graduated from Grand Island Northwest High School at the time of the school district's alleged conduct. Grand Island Northwest's actions did not prevent him from writing or publishing articles in the *Viking Saga*, nor could they do so in the future. Pennell attempts to plead around this obstacle by alleging that he now suffers from "enduring fear and trauma" that prevent him from speaking out on LGBTQ+ topics. [Filing No. 1 at ¶¶ 70, 72.] But now that Pennell has graduated, none of these subjective feelings could deter him from engaging in protected speech at Grand Island Northwest, and it is not plausible that actions taken by his former high school could deter Pennell from speaking now that he is no longer a student there.

A similar analysis dooms Pennell's ability to assert his Third Claim, which alleges a right to receive information. The *Viking Saga* staff was and is made up of the members of the Newspaper class and the class's instructor. [Filing No. 1, ¶¶ 11, 12, 17.] Plaintiffs

admit that the "newspaper class is part of the educational curriculum at [Grand Island Northwest High School] and students enrolled in the class received corresponding class credit and a grade for completion of the class." [Filing No. 1, ¶ 19.] The *Viking Saga* was "distributed by hand for free *on the GINW campus* in classrooms on students' desks and GINW and District offices." [Filing No. 1, ¶ 27 (emphasis added).] Pennell is no longer a student at and was not a student at Grand Island Northwest High School during the sole semester in which the school did not offer the Newspaper class. [Filing No. 1, ¶ 4.] While Pennell alleges that he wanted to return to be interviewed for articles and to mentor students, there is no allegation that he would have had the right to either of these things, and he can access the Viking Saga online. Consequently, Pennell does not have a cognizable interest in Grand Island Northwest High School's curricula, including the *Viking Saga*, sufficient to allege an injury in fact for purposes of Article III standing.

**B.     Pennell has not plausibly alleged viewpoint discrimination.**

Even if Pennell had standing, the Complaint does not allege a viable claim of viewpoint discrimination. Viewpoint discrimination occurs when a government targets "particular views taken by speakers on a subject." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995). Thus, to plausibly allege viewpoint discrimination, Pennell must allege that he was excluded from a public forum based on the point of view he expressed.

Pennell has not—and cannot—make such an allegation. Pennell admits he was **allowed to express his viewpoint** in the June 2022 *Viking Saga*. All of the alleged events with respect to the Newspaper class and *Viking Saga* occurred after he graduated from and vacated the forum. Pennell is no longer within the class of people potentially chilled from this decision. See *Doe v. Hopkinton Pub. Sch.*, 19 F.4th 493, 510–11 (1st Cir. 2021) ("Having graduated—and thus no longer subject to the Hopkinton Bullying

10

Policy or section 37O—Doe and Bloggs [the plaintiffs] do not fall within the "class of persons potentially chilled.").

Moreover, Pennell's allegation of viewpoint discrimination based on the "elimination" of the *Viking Saga* fails by the very fact that the Newspaper class is being offered in the current semester of the 2022-23 school year and the students enrolled in the Newspaper class are currently engaged in expressive activity in the *Viking Saga*. Pennell does not allege the Defendants disfavored a subset of expressive conduct based on viewpoint in the way the Newspaper class and the *Viking Saga* were run in the 2022-23 school year.

Pennell may attempt to argue that a one-semester pause in publication of the *Viking Saga* violated the First Amendment. However, the U.S. Supreme Court has held that the government has the authority to close a public forum. *See Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 699–700 (1992). In *Int'l Soc'y*, the U.S. Supreme Court explained—

> In some sense the government always retains authority to close a public forum, by selling the property, changing its physical character, or changing its principal use. Otherwise[,] the State would be prohibited from closing a park, or eliminating a street or sidewalk, which no one has understood the public forum doctrine to require. The difference is that when property is a protected public forum the State may not by fiat assert broad control over speech or expressive activities; it must alter the objective physical character or uses of the property, and bear the attendant costs, to change the property's forum status.

505 U.S. at 699. *See also Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985) ("The government is not required to indefinitely retain the open character of the facility."); *Sons of Confederate Veterans, Virginia Div. v. City of Lexington, Virginia*, 722 F.3d 224, 230–32 (4th Cir. 2013) (upholding an ordinance that reversed a city's practice of allowing all groups from displaying flags on utility poles); *Straights & Gays for Equal. (SAGE) v. Osseo Area Sch.-Dist. No. 279*, 471 F.3d 908, 913 (8th Cir.

11

2006) (holding the school is "free to wipe out all of its noncurriculum related student groups and totally close its forum").

In this case, Defendants did not "eliminate" the Newspaper class or the *Viking Saga* for all students. There was nothing more than a one-semester pause. And, as noted above, there is no allegation that the *Viking Saga* discriminated against any viewpoint. Pennell's claim of viewpoint discrimination is thus subject to dismissal on its merits.

**C.    Pennell failed to state a claim of First Amendment retaliation.**

Pennell's claim that Defendants retaliated against him when they eliminated or paused the *Viking Saga* similarly fails. The claim of retaliation requires a showing that (1) Pennell engaged in a protected activity; (2) the Defendants took a materially adverse action against him; and (3) the protected activity was the but-for cause of Defendants' adverse action. *See Laney v. City of St. Louis, Missouri*, 56 F.4th 1153, 1157 (8th Cir. 2023); *Henry v. Johnson*, 950 F.3d 1005, 1011 (8th Cir. 2020) (citation omitted); and *Thomas v. Culclager*, No. 4:20-CV-01486-LPR, 2023 WL 2478715, at *16 (E.D. Ark. Mar. 13, 2023). To show adverse action, Pennell must plead sufficient facts showing the Defendants' alleged action "would chill a person of ordinary firmness from continuing the activity." *See Laney,* 56 F.4th at 1157. *See also Scheffler v. Molin,* 743 F.3d 619, 621 (8th Cir. 2014).

There is no allegation that Defendants took any action, adverse or otherwise, against Pennell. To the contrary, the alleged actions of Grand Island Northwest were taken toward the newspaper ***after*** Pennell had graduated. While Pennell may disagree with that decision, Pennell does not—and cannot—allege that he has been chilled from writing articles in the *Viking Saga*. As a former student, he would have no ability to do so. Pennell does allege that he suffers from "fear and trauma" when it comes to expressing himself on LGBTQ+ issues in written mediums, but it is not plausible that

12

action taken by Defendants to pause the publication of a school newspaper would chill Pennell from speaking now that he is no longer a student at the school.

**D.     Plaintiffs' Third Claim is likewise subject to dismissal.**

In Plaintiffs' Third Claim, and the only claim joined by the Press Association, Plaintiffs allege Defendants violated their First Amendment "right to receive information" by "terminating the publication of the *Viking Saga*." [Filing No. 1, ¶ 95.] However, both Pennell and the Press Association lack standing to bring the claim. To establish Article III standing, the Plaintiffs must each clearly allege facts demonstrating (1) an injury in fact, (2) that is fairly traceable to the challenged conduct and (3) to seek a remedy likely to redress that injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). Plaintiffs' claim must be dismissed because both Plaintiffs lack an injury in fact and the Press Association's claim is not redressable.

**1.     Plaintiffs fail to identify a "willing speaker."**

"[T]he right to receive speech is 'entirely derivative' of the rights of the speaker." *Pa. Family Inst., Inc. v. Black*, 489 F.3d 156, 165 (3d Cir. 2007) (quoting *In re Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 608 (2d Cir. 1988)). *See also Va. State Bd. Of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 758 (1976) ("Freedom of speech presupposes a willing speaker."). However, "[t]he right to receive information is not as broad as the right of free speech from which it stems." *Student Press Law Ctr. v. Alexander*, 778 F.Supp. 1227, 1233 (D.D.C. 1991). "While the First Amendment protects an individual's right to speak on whatever subject he or she chooses, the First Amendment does not protect an individual's right to receive information on every subject." *Martin v. U.S. E.P.A.*, 271 F.Supp.2d 38, 48 (D.D.C. 2002). Consequently, "[t]he right to receive information . . . is not established in every case where a person wishes to receive information." *Gregg v. Barrett*, 771 F.2d 539, 547 (D.D.C. 1985).

13

"The First Amendment right to receive information requires only that the government not engage in conduct that impermissibly silences a willing speaker." Martin, 271 F.Supp.2d at 48. Consequently, "[e]very circuit to have considered the question of standing in the context of a right-to-receive claim has reached the same conclusion: [I]n order to maintain a 'right to listen' claim, a plaintiff must clearly establish the existence of a 'willing speaker.' In the absence of a willing speaker, an Article III court must dismiss the action for lack of standing.'" Bond v. Utreras, 585 F.3d 1061, 1077 (7th Cir. 2009) (quoting Pa. Family Inst., 489 F.3d at 166). See, e.g., Animal Legal Defense Fund v. Kelly, 434 F. Supp. 3d 974, 994 (D. Kans. 2020) ("In order [t]o establish standing based on a violation of the right to receive information—or 'right to listen'—plaintiffs must first show existence of a willing speaker."); Stephens v. County of Albermarle, VA, 524 F.3d 485, 492 (4th Cir. 2008) ("to have standing to assert a right to receive speech, a plaintiff must show that there exists a speaker willing to convey the information to her").

A willing speaker is "someone who is willing to state that his rights were infringed upon, or that his exercise of rights was chilled by" the Defendants. Pa. Family Inst., 489 F.3d at 166. "[T]o prove there is a 'willing speaker,' a party must show at least that but for a challenged regulation of speech, a person would have spoken." Id. at 166. A willing speaker must be pleaded with a level of specificity. Thus, in Hardy v. Hamburg, 69 F. Supp. 3d 1, 19 (D.D.C. 2014), the court dismissed a right-to-receive information claim where plaintiffs failed to identify "any specific 'willing speaker,' which is necessary to show an injury-in-fact for purposes of standing to assert this claim." Id. Plaintiffs' Complaint similarly fails to identify any specific "willing speaker" who is "willing to state that his rights were infringed upon, or that his exercise of rights was chilled."

14

### 2.  The Press Association's claim for the Right to Receive Information is not redressable.

In addition to lacking a "willing speaker" as required to plead an injury-in-fact for purposes of Article III standing, the Press Association's claim for the right to receive information must be dismissed because its alleged injuries are not redressable by this Court. In its sole claim, the Press Association alleges Defendants violated its First Amendment right to receive information by "terminating" the *Viking Saga*. The Press Association alleges that "terminating" the *Viking Saga* injured it because it prevented them from "reaching GINW students in newspaper class who are interested in continuing to develop their skills and knowledge in newspaper writing and publication" and from "discuss[ing], critique[ing], and evaluat[ing] the *Viking Saga* through convenings and competitions." [Filing No. 1, ¶¶ 99 & 100.]

The Press Association's claim is defeated by information in the public record that is embraced by the Complaint, *i.e.*, the continued publication of the *Viking Saga* during the 2022–2023 school year. The Complaint alleges that the Press Association could no longer give and receive feedback on the *Viking Saga* and that its members were prevented from teaching students at Grand Island Northwest. These allegations are plainly untrue.

Even if the Press Association had suffered harm as alleged in the Complaint, that harm would not be redressable, as is required for Article III standing. *See United States v. Wecht*, 484 F.3d 194, 203 (3d Cir. 2007) (discussing the requirement of redressability). The Press Association does not allege that it suffered any pecuniary harm as a result of the pause in publication of the *Viking Saga*. The harm alleged by the Press Association falls in the category of general damages, *e.g.*, "loss of reputation, shame, mortification, injury to feelings and the like[.]" *F.A.A. v. Cooper*, 566 U.S. 284, 296 (2012). *See also Guzman v. W. State Bank of Devils Lake*, 540 F.2d 948 (8th Cir. 1976). However, the

15

Press Association is "an incorporated, registered nonprofit corporation in Nebraska." [Filing No. 1, ¶ 3.] "Multiple federal courts, each applying state law, have found that a corporate (non-human) plaintiff cannot suffer emotional distress because 'a corporation lacks the cognizant ability to experience emotions.'" *HM Hotel Props. v. Peerless* Indent. *Ins. Co.*, 874 F. Supp. 2d 850, 854 (D. Ariz. 2012) (quoting *F.D.I.C. v. Hulsey*, 22 F.3d 1472, 1489 (10th Cir. 1994); *see also Wilson v. Colonial Penn Life Ins. Co.*, 454 F. Supp. 1208, 1213 n. 9 (D. Minn. 1978) ("Certainly, the plaintiff National City Bank of Minneapolis is incapable of suffering emotional distress."). Consequently, the Court is unable to award the general damages the Press Association seeks.

Finally, the Press Association's request for "such other relief as the Court deems equitable, just and proper" fails to redress any alleged injury in fact. Conspicuously, Plaintiffs' Complaint does **not** request injunctive or declaratory relief as is typical in "right to listen" cases. *See, e.g.*, *Student Members of Same v. Rumsfeld*, 321 F.Supp.2d 388, 394 (D. Conn. 2004) (citing at least 10 "Right to Receive Information" cases in Subsection II.A.1.b., all of which sought declaratory or injunctive relief). This is because any such request would be deemed moot—as discussed above, the newspaper class and the *Viking Saga* were not "terminated," but rather were paused for a single semester.

"None of the specific items of relief sought" by the Press Association, and none that the court could "envision as 'appropriate' under the general request, would serve to reimburse" the Press Association for the alleged losses caused by a lack of access to the *Viking Saga* for the fall semester of 2022. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 105–06 (1998). "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Id.* at 107. Consequently, the Press Association's claim must be dismissed for lack of standing.

16

### E. Dr. Edwards is protected by qualified immunity.

If the Court somehow finds that Plaintiffs have plausibly alleged a First Amendment violation, Dr. Edwards is still protected from suit in his individual capacity by the doctrine of qualified immunity. The doctrine of qualified immunity provides that "a court must dismiss a complaint against a government official in his individual capacity that fails to state a claim for violation of 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013–14 (8th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

"Qualified immunity shields a government official from liability and the burdens of litigation in a § 1983 action for damages unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable official would have known." *Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011) (citing *Harlow*, 457 U.S. at 818). "As the Supreme Court has reiterated, "'[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curian) (quoting *Ascroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotation omitted)). Thus, "[u]nless the [plaintiffs'] allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Plaintiffs have failed to plead sufficient facts to show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Partridge v. City of Benton*, 929 F.3d 562, 565 (8th Cir. 2019) (internal quotation omitted). The Court may address this analysis in any order

and should find that Plaintiffs have failed to state a violation of a clearly established constitutional right, and Dr. Edwards is entitled to qualified immunity.

Here, it is not enough for Plaintiffs to assert that they had a general right to First Amendment freedom of speech or the right to receive information. Whether the law is "clearly established . . . should not be defined at a high level of generality." *Estate of Walker v. Wallace*, 881 F.3d 1056, 1060 (8th Cir. 2018). Rather, the question is whether these particular Plaintiffs—a student who has already graduated and a collection of school journalism teachers—had a clearly established right to the continuous operation of and access to the Newspaper class, and thereby the *Viking Saga*, at Grand Island Northwest. As set forth above, it cannot be the case that Dr. Edwards violated any clearly established constitutional right of either Pennell or the Press Association by pausing the Newspaper class for a single semester. Holding that such an action violates a "clearly established right" would make it virtually impossible for school administrators to exercise their recognized "broad discretion in the management of school affairs." *Island Trees*, 457 U.S. at 863.

**F.      Plaintiffs have failed to plead special damages.**

Plaintiffs pray for "specific damages." To the extent this request is interpreted as seeking special damages, it must be dismissed. FED. R. CIV. P. 9(g) provides "if an item of special damage is claimed, it must be specifically stated." No paragraph in the Complaint specifies any pecuniary damage suffered by Plaintiffs as a result of the alleged violations. The conclusory and factually unsupported request for "general and specific damages" fails to meet the basic plausibility standard of pleading, let alone the special pleading requirement under Rule 9(g). Accordingly, because Plaintiffs have not specifically stated that they have suffered special damages, such a request must be dismissed.

18

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Dismiss and enter an Order dismissing Plaintiffs' Complaint in its entirety and with prejudice.

Dated this 30th day of May 2023

           NORTHWEST PUBLIC SCHOOL DISTRICT, a Political Subdivision; JEFFREY EDWARDS, in his individual capacity, Defendants

By: /s/ Lily Amare
Andre R. Barry, #22505
Lily Amare, #25735
Cline Williams Wright
 Johnson & Oldfather, L.L.P.
1900 U.S. Bank Building
233 South 13th Street
Lincoln, NE 68508
(402) 474-6900
abarry@clinewilliams.com
lamare@clinewilliams.com

## CERTFICATE OF COMPLIANCE

I, Lily Amare, hereby certify that this Brief complies with the limits set forth in NECivR 7.1(d). Further, based on the Word Count function of Microsoft Word 2013 word processing software, applied to include all text, including the caption, headings, footnotes, and quotations, I certify this Brief contains 5418 words.

/s/ Lily Amare
Lily Amare

**CERTIFICATE OF SERVICE**

    I, Lily Amare, hereby certify that on May 30, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties who have entered an appearance in this case as well as electronically transmitted.

    Rose Godinez
    Jane Seu
    ACLU OF NEBRASKA
    134 South 13th Street, Suite 1010
    Lincoln, NE 68508
    rgodinez@aclunebraska.org
    jseu@aclunebraska.org

    /s/ Lily Amare
    Lily Amare

4862-4006-5379, v. 5