## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

NEBRASKA HIGH SCHOOL PRESS
ASSOCIATION, INC., a Nebraska nonprofit
corporation; and MARCUS PENNELL,

        Plaintiffs,

vs.

NORTHWEST PUBLIC SCHOOL DISTRICT,
a Political Subdivision; JEFFREY EDWARDS,
in  his individual capacity,

        Defendants.

CASE NO.  4:23-CV-3043

**PLAINTIFFS' BRIEF IN OPPOSITION
TO MOTION TO DISMISS**

## <u>INTRODUCTION</u>

Plaintiffs have established standing and have sufficiently plead allegations supporting

each of their claims against the Northwest Public School District (District) and Jeffrey Edwards

(collectively referred to as "Defendants"). Plaintiff Marcus Pennell is a former student of

Northwest High School (GINW) where Defendants engaged in unconstitutional viewpoint

discrimination and retaliation against Marcus for exercising his free speech rights by writing an

article about LGBTQ+ issues in the student newspaper, the *Viking Saga*. Marcus' First

Amendment claims do not expire because he graduated from GINW.

Defendants further violated both Plaintiffs' right to receive information under the Frist

Amendment. Since Defendants terminated the newspaper class and the *Viking Saga* in May of

2022, Plaintiff Nebraska High School Press Association (NHSPA) no longer has a member

teaching a newspaper class or serving as an advisor in a student newspaper at GINW. As a result,

no *Viking Saga* advisors, teachers, or students participate in its conferences or competitions in

furtherance of its mission to promote excellence in high school journalism. Defendants' hostile actions toward speech on LGBTQ+ issues have had a chilling effect on Plaintiff Marcus who is afraid to maintain contact with his alma mater and speak out about his identity. High school journalism teachers who make up the membership of Plaintiff NHSPA fear similar retaliatory action from school administration if administrators simply disagree with an article in the student newspapers they advise.

Defendants move to dismiss Plaintiffs' Complaint pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6) alleging Plaintiffs lack standing and fail to state their claims. Plaintiffs have sufficiently pled a redressable injury-in-fact as a result of both Defendants' direct discriminatory and retaliatory action by terminating the newspaper class and *Viking Saga* newspaper publication.

For the foregoing reasons, Plaintiffs request the Court overrule the Defendants' Motion to Dismiss.

## <u>SUMMARY OF FACTS</u>

Shortly after the student newspaper *Viking Saga* featured LGBTQ+ related content written by its students, Defendants terminated publication of the newspaper and newspaper class. (Pls' Compl., Filing 1, p. 11-16). Plaintiff Marcus Pennell was a high school senior and student reporter of the *Viking Saga* at the time of Defendants' actions to terminate the student newspaper class and *Viking Saga*. (Filing 1, p. 3). Marcus carefully researched and drafted an article on Florida's "Don't Say Gay" law, which was published on May 16, 2022 in the June 2022 edition of the *Viking Saga*. (Filing 1, p. 12).

The day after the June 2022 edition was published, Defendants reacted to the LGBTQ+ content with hostility and immediately contemplated shuttering the student newspaper. (Filing 1,

p. 13). Defendants' Board President stated in a May 17, 2023 email, "'I'm sure this is a revenge tactic from the pronoun thing a month or so ago. But I'm going back and forth in the field and I just keep getting more and more upset. I'm hot on this one, because it's not ok. The national media does the same crap and I've had enough of it. No more school paper, in my opinion. You give someone an inch, they take a mile.'" (Filing 1, p. 13 quoting Ex. 8). "The pronoun thing" refers to Defendants' prior directive prohibiting *Viking Saga* staff from using the name and pronouns that reflect their gender identity. (Filing 1, p. 10–11).

On May 19, 2022, Defendants announced that the publication of the *Viking Saga* would cease and the newspaper class would no longer be offered. (Filing 1 p. 12). No alternative course for the newspaper class would be offered either. (Filing 1, p. 15). Defendant Edwards expressed to GINW staff that he was "'unhappy with the last issue's editorial content'" and also sent a letter dated August 31, 2022 to District parents and guardians that "the newspaper course is currently not included [in the District's] curriculum offerings." (Filing 1, p. 14–15). Defendants made public statements that expose their discriminatory animus toward the LGBTQ+ content of the *Viking Saga* that was written and published by the students. (Filing 1, p. 14-15; Exs. 8–11; Ex. 9). One board member plainly stated that, "[t]here were editorials that were essentially, I guess what I would say, LGBTQ" when asked about the sudden termination of the student newspaper. (Filing 1, p. 15 quoting Ex. 9).

Since Defendants' retaliatory action, Marcus is not able to mentor current students in newspaper and does not feel safe at his alma mater. (Filing 1, p. 17). Since the Defendants' terminated the student newspaper, Marcus is not able to pick up copies of the Viking Saga that would otherwise be available to him. (Id). Marcus is also not able to write in the *Viking Saga* as an outside contributor since the paper also had previously accepted outside submissions. (Filing

3

1, p. 6, 17). As a result of Defendants' retaliatory reaction toward his speech, Marcus lives in fear and emotional distress from speaking out about LGBTQ+ issues. (Filing 1, p. 17).

By terminating the newspaper program, Plaintiff Nebraska High School Press Association is not able to engage in speech to educate, promote and build a community of young, rising, and established journalists in accordance with its mission to promote excellence in high school journalism. (Filing 1, p. 2, 18). NHSPA brings this action on behalf of itself and its members who are journalism teachers and advisors from Nebraska high schools. (Filing 1, p. 2-3). After the *Viking Saga* newspaper was terminated, publication of the *Viking Saga* was allegedly brought back in digital format only and the advisor position was offered to another teacher who is not a member of NHSPA. (Filing 1, p. 16; Ex. 11). Defendants' hostile action toward the *Viking Saga* not only prevents NHSPA from teaching journalism skills at GINW but its members are now fearful of reassignment or other retaliatory action if the school administration disagrees with the content of their student newspaper. (Filing 1, p. 18).

Plaintiffs assert the relief they seek as damages, attorney's fees, costs of this action, and such other relief as the Court deems equitable, just and proper. (Filing 1, p. 22)

## STANDARDS OF REVIEW

### I.   Subject Matter Jurisdiction

A motion to dismiss for lack of subject matter jurisdiction is limited to a facial attack on the pleadings. *Mattes v. ABC Plastics, Inc.,* 323 F.3d 695, 698 (8th Cir. 2003). If it is a facial attack, the court accepts all allegations of the complaint as true and draws all reasonable inferences in favor of the Plaintiffs. *Branson Label, Inc. v. City of Branson,* 793 F.3d 910, 914 (8th Cir. 2015)*; Hamm v. Groose,* 15 F.3d 110, 112 (8th Cir. 1994); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009). The court must only look at the complaint to determine

4

whether the Plaintiffs have "sufficiently alleged a basis of subject matter jurisdiction." *Branson Label, Inc.,* 793 F.3d at 914. Generally, "a court may not consider materials outside the pleadings" when deciding a motion to dismiss. *Anglim v. Sharp Med. Staffing, LLC*, No. 8:21-CV-171, 2021 WL 4627873, at *2 (D. Neb. Oct. 7, 2021) (citing *Greenman v. Jessen,* 787 F.3d 882, 887 (8th Cir. 2015)). While the Court may consider "materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record", the Eighth Circuit has interpreted "matters outside the pleadings" broadly. *Id.* The Eighth Circuit views "'matters outside the pleading' as including any written or oral evidence [] in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings." *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992) (quoting *Wright & Miller, Federal Practice and Procedure § 1366*).

## II.    Failure To State a Claim

To survive a motion to dismiss, Plaintiffs must allege sufficient facts, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The U.S. Supreme Court made clear that Rule 8(a) of the Federal Rules of Civil Procedure require pleadings to contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* U.S. 163, 166 (1993). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Richter v. Advance Auto Parts, Inc.,* 686 F.3d 847, 850 (8th Cir. 2012). "'[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the facts alleged] is improbable, and that a recovery is very remote and unlikely.'" *Davis v. Wash. Univ. in St. Louis,* 960 F.3d 483-84 (8th Cir. 2020) (quoting *Bell Atl. Corp v. Twombly,*

550 U.S. 544, 556 (2007)). Civil rights pleadings in particular should be construed liberally. *Frey v. City of Herculaneum,* 44 F.3d 67, 671 (8th Cir. 1995).

### III.   Qualified Immunity

Qualified immunity shields a public official from liability for civil damages insofar as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982) ("since a reasonably competent public official should know the law governing his conduct."). The Eighth Circuit Court of Appeals has "taken a broad view of what constitutes 'clearly established law' for the purposes of a qualified immunity inquiry." *Sexton v. Martin,* 210 F.3d 905, 909 (8th Cir. 2000)*.* "For a right to be deemed clearly established, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Buckley v. Rogerson,* 133 F.3d 1125, 1128 (8th Cir.1998) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987) ("[A] court should look to all available decisional law including decisions of state courts, other circuits and district courts" to determine if a right has been clearly established.)

### **ARGUMENT**

### I.   The Court should deny Defendants' Motion to Dismiss because Plaintiffs have established standing to bring their First Amendment claims against Defendants.

To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). The Plaintiffs' complaint need only include "general factual allegations of injury resulting from the defendant[s'] conduct." *Bennett v. Spear*, 520 U.S. 154, 168 (1997)

(quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)); *Young Am.'s Found. v. Kaler*, 14

F.4th 879, 894 (8th Cir. 2021). Plaintiffs satisfy this modest standard.

Plaintiffs assert that Defendants unconstitutionally terminated the newspaper class and

student newspaper the *Viking Saga* in violation of the First Amendment and bring forth claims of

retaliation, viewpoint discrimination and the right to receive information.

### a. Plaintiff Marcus Pennell has sufficiently alleged an injury-in-fact resulting from his First Amendment claims against Defendants.

The Supreme Court has explained that the injury in fact requirement means showing "an

invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or

imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560-61 (citations and quotation

omitted). Plaintiff Marcus need not "expose himself to actual arrest or prosecution to be entitled

to challenge a statute that he claims deters the exercise of his constitutional rights," *Steffel v.

Thompson,* 415 U.S. 452, 459 (1974). Instead, he must only show that his injury is more than

"imaginary or speculative." *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298

(1979) (quoting *Younger v. Harris,* 401 U.S. 37, 42 (1971)). As provided in Defendants' brief,

"[a] chilling effect on speech protected by the First Amendment can constitute an injury in fact."

*Balogh v. Lombardi,* 816 F. 3d 536, 542 (8th Cir. 2016); (See Defs.' Brief in Support of Motion

to Dismiss, Filing 11, p. 9).

Defendants argue that Plaintiff Marcus is not chilled from protected speech because "he

had graduated from GINW at the time of the [Defendants'] alleged conduct." (See Filing 11, p.

9). There is no merit to this argument, and the Court should reject it. Courts have allowed former

students to bring § 1983 actions against their former school. *See Ward v. Polite*, 667 F.3d 727

(6th Cir. 2012); *Axson-Flynn v. Johnson*, 356 F.3d 1277 (10th Cir. 2004); *Zamecnik v. Indian

Prairie Sch. Dist. No. 204*, 636 F.3d 874, 879 (7th Cir. 2011). The cases cited to by Defendant

further support Plaintiffs' position or are easily distinguishable from the stage in proceedings of the case at hand. (See Filing 11, p. 8-9). In *Salvail v. Nashua Bd. of Ed.,* 469 F. Supp. 1269, 1270, 1272 (D.N.H. 1979), the court only dismissed the "adult residents and taxpayers," not the students who were students at the time of the events which gave rise to the litigation and had graduated. In *Case v. Unified Sch. Dist. No. 233*, 908 F. Supp. 864, 873 (D. Kan. 1995), the court states that it "has previously determined that current and former students…had standing to challenge the removal of [a book]…because they maintained access to the library…even after graduation." The court only dismisses the former students *after* trial and hearing evidence on the merits. *Id; Right To Read Def. Comm. of Chelsea v. Sch. Comm. of City of Chelsea*, 454 F. Supp. 703, 705 (D. Mass. 1978) (former student plaintiffs similarly dismissed only *after* the court heard evidence at the trial on the merits). Further, to the extent Defendants allege Marcus' retaliation claim is moot because he has graduated, that argument does not hold water either—the mootness doctrine does not bar a claim for damages. *Turning Point USA at Arkansas State Univ. v. Rhodes*, 409 F. Supp. 677, 686 (E.D. Ark. 2019), *aff'd,* 973 F.3d 868 (8th Cir. 2020); *Kuhlmeier v. Hazelwood Sch. Dist.,* 596 F. Supp. 1422, 1427 (E.D. Mo. 1984), *rev'd* 795 F.2d 1368 (8th Cir. 1986) *rev'd* 484 U.S. 260 (1988).

To the extent Defendants argue Marcus could not be deterred from speaking or is not a willing speaker in the *Viking Saga* because he is no longer a student, that is also incorrect. As Plaintiffs alleged, the newspaper class students and *Viking Saga* staff would occasionally publish student pieces and editorial cartoons from students no longer enrolled in the class and encouraged outside submissions or letters to the editor to the student body and community readers. (Filing 1, p. 6); *see also Pennsylvania Fam. Inst., Inc. v. Black*, 489 F.3d 156, 166 (3d

Cir. 2007) (Plaintiff can meet willing speaker requirement when he shows that he would have spoken but for the Defendants' actions.)

Plaintiff Marcus clearly demonstrates in his Complaint that he suffered, and continues to suffer, an injury in fact when he was prevented from participating in the *Viking Saga* after it was terminated. (Filing 1, p. 16-22). Defendants allege Plaintiff Marcus lacks standing because Defendants "did not prevent him from writing or publishing articles in the *Viking Saga,* nor could they do so in the future." (See Filing 11, p. 9). While it is true that the culmination of Defendants' openly anti-LGBTQ+ and retaliatory actions did not take place until after Marcus' article was published, as established above, the fact that Marcus graduated before Defendants' actions does not prevent his injuries as alleged—the actual injury *and* threat of continued injury remains. *Balogh,* 816 F. 3d at 542 quoting *Laird v. Tatum,* 408 U.S. 1, 11 (1972) (injury in fact includes "threat of a specific future harm.") But for Defendants' termination of the newspaper class and *Viking Saga,* Marcus would have continued contact, mentored, guided, served as an interviewee for future articles with the remaining *Viking Saga* staff and prior faculty advisor. (Filing 1, p. 17). Marcus would also have physically picked up his former student newspaper as an alumnus and shared it with his peers and community. (Id). Since the *Viking Saga* was terminated, Marcus does not intend to visit GINW or help create or disseminate information from the *Viking Saga.* (Id); *see Sorrell v. IMS Health Inc.,* 564 u.s. 552, 570 (2011) (explaining that the "creation and dissemination of information are speech within the meaning of the First Amendment").

Even if Defendants' allegations of reviving the newspaper class and an online version of the *Viking Saga* are true, here remains a "credible threat" that Defendants will terminate the *Viking Saga*, again. *See Balogh*, 816 F.3d at 542 (finding that "fear of legal action that chills an

organization's speech" is sufficient to allege an injury in fact); *see also Prowse v. Payne*, 984 F.3d 700, 702–03 (8th Cir. 2021) ("[A] defendant cannot always moot a case simply by voluntarily ceasing its unlawful conduct…"); *Hillesheim v. Holiday Stationstores, Inc.*, 903 F.3d 786, 791 (8th Cir. 2018) ("[V]oluntary cessation of a challenged practice does not necessarily moot a case.")

Marcus has sufficiently alleged an injury in fact as there is a direct and credible threat that Defendants could terminate the newspaper class again and not reinstate the physical version of the *Viking Saga* if Marcus participates and expresses his viewpoint on LGBTQ+ issues with the newspaper class or *Viking Saga* staff.

**b. Plaintiff NHSPA has sufficiently alleged facts to satisfy the willing speaker and redressability requirements to establish standing for their right to receive information claim.**

Defendants next move to dismiss alleging Plaintiff NHSPA lacks standing to bring a claim for their right to receive information under the First Amendment for lack of a "willing speaker" to "plead an injury-in-fact" and because its claim is "not redressable by this Court." (*See* Filing 11, p. 15). Plaintiffs alleged sufficient facts to establish both injury in fact and redressability.

**i. Injury in fact: Willing speaker requirement.**

"[T]o have standing to assert a right to receive speech, a plaintiff must show that there exists a speaker willing to convey the information." *Stephens v. Cnty. Of Albemarle, VA*, 524 F.3d 485, 492 (4th Cir. 2008). "To prove there is a 'willing speaker,' a party must show at least that but for a challenged regulation of speech, a person would have spoken." *Black*, 489 F.3d at 166.

NHSPA easily meets this requirement. As alleged in their Complaint, NHSPA is bringing this case on behalf of itself and its members, including "school journalism teachers and student publication advisors from across Nebraska high schools…, persons who are professionally engaged in journalism and promote high school journalism in Nebraska, as well as former high school journalism teachers and junior high school teachers with school publications." (Filing 1, p. 2). Its membership includes the former GINW newspaper class teacher Ms. Kirsten Gilliland and the *Viking Saga* faculty advisor. (Filing 1, p. 5-6). The designated faculty advisor for the *Viking Saga* "has been a member of the NHSPA since at least the year 2012." (Filing 1, p. 6). However, after Defendants terminated the newspaper class and *Viking Saga,* Defendants offered the newspaper class and advising position to another teacher, not a member of the NHSPA. (Filing 1, p. 16, Ex. 11). Because of Defendants' termination of the newspaper class and *Viking Saga,* NHSPA and its members "could no longer promote or read the *Viking Saga,* share its content, give or receive feedback on the publication, enter the publication into NHSPA competitions for critique and rating, or participate in the NSAA Journalism Championship in the newspaper category." (Filing 1, p. 18). Defendants' actions further prevented NHSPA and its members "from teaching GINW High School newspaper students journalism skills that are not otherwise taught in any other GINW class…because those skills are unique to journalistic skills in the newspaper context." (Id). NHSPA prides itself with "promot[ing] and support[ing] high school journalism", however after Defendants' actions, NHSPA members have become "fearful of any similar backlash toward their own publications and restricted and chilled their ability to teach and promote" journalism. (Filing 1, p. 2-3, 18).

Defendants' allegations that the *Viking Saga* "continued publication…during the 2022-2023 school year" online is questionable and moreover immaterial to Plaintiffs' claims. *See*

*Koala v. Khosla*, 931 F.3d 887, 898-99 (9th Cir. 2019) (Court found that the defendant's creation of a new forum did not change the chilling effect upon Plaintiffs, stating "[i]f the government could define the contours of a limited public forum one way at its inception, then redefine its scope in response to speech it disfavors, the government would be free to zero-in and selectively silence any voice or perspective.")

NHSPA meets the standing requirement for a right to receive information claim because they have identified their willing speakers as its members, including Ms. Gilliland.

ii. **Redressability**

"[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself." *Larson v. Valente*, 456 U.S. 228, 270 (1982); *Pharm. Rsch. & Manufacturers of Am. v. Williams*, 64 F.4th 932, 940 (8th Cir. 2023). "[U]nder Eighth Circuit law, Plaintiff [organization] may pursue its § 1983 claims on behalf of its members." *Am. Civ. Liberty Union of Minn. v. Tarek ibn Ziyad Acad.,* 788 F. Supp. 2d 950, 956–57 (D. Minn. 2011); *Coalition for Sensible & Humane Solutions v. Wamser,* 771 F.2d 395, 399 (8th Cir.1985) (Eighth Circuit held that plaintiff organization had "standing on the basis of any injury to its members."). Here, as established above, NHSPA sufficiently alleged facts of the injury to its organization and members.

Plaintiff NHSPA has also sufficiently alleged the relief they seek. (Filing 1, p. 22). Specifically, "Plaintiffs [Marcus and NHSPA] pray for judgment against the Defendants" for damages, attorney's fees, costs of the action, and "[f]or such other relief as the Court deems equitable, just and proper." (Id).  Whether Defendants or other litigants in other cases would have worded the Complaint differently should not determine whether the Complaint meets the pleading standards under Fed. R. Civ. P. 8(a). As written, the Plaintiffs' Complaint puts

Defendants "on fair notice, adequate under the notice-pleading requirements, of [NHSPA's] claim for equitable relief." *Eastman v. Cnty. of Sheridan*, No. 707CV5004, 2007 WL 1814214, at *6 (D. Neb. June 21, 2007), *report and recommendation adopted sub nom. Eastman v. Sheridan, Cnty. of*, No. 7:07CV5004, 2007 WL 2068108 (D. Neb. July 16, 2007) (denying defendants' "motion for an order requiring the plaintiff to make the prayer for equitable relief more definite and certain" when "plaintiff's prayer for equitable relief is listed generally as 'other and further relief as this Court deems equitable and proper'").

Both Plaintiffs have satisfied the liberal pleading standard required to establish standing at this stage of the proceedings and the Defendants' motion to dismiss should therefore be denied.

## II.    The Court should deny Defendants' Motion to Dismiss because Plaintiffs' claims are adequately plead.

### a.    Plaintiff Marcus Pennell has alleged sufficient facts supporting his respective claims of retaliation and viewpoint discrimination under the First Amendment pursuant to 42 U.S.C. § 1983.

Plaintiff Marcus Pennell clearly alleges Defendants under "color of state law committed an act that deprived" Marcus of his right to free speech without retaliation or viewpoint discrimination protected by the U.S. Constitution. (See Filing 1); *See generally Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 691-692 (1978); *Henley v. Brown*, 686 F.3d 634, 643 (8th Cir. 2012). Agreeing that Plaintiffs' allegations are taken as true, Defendants state, "Dr. Edwards is…the superintendent of Grand Island Northwest" and is a therefore a state actor. (Filing 11, p. 4); *see American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50 (1999); *West v. Atkins*, 487 U.S. 42, 49-50 (1988). Defendants further seem to admit that they terminated the newspaper class and student newspaper the *Viking Saga* in both its physical and digital form for at least one semester. (Filing 11, p. 6). However, Defendants completely avoid addressing the

13

reason for the termination of the newspaper class and *Viking Saga*—at the core of this suit—of which Marcus has alleged sufficient facts claiming Defendants deprived him of his Free Speech rights to meet the deprivation element of 42 U.S.C. § 1983.

### i. Plaintiff Marcus Pennell sufficiently alleges conduct violating his freedom of speech free of retaliation under clearly established law.

This Circuit has long recognized that "[r]etaliation by a government actor in response to…an exercise of First Amendment rights forms a basis for § 1983 liability." *Williams v. City of Carl Junction, Mo.,* 480 F.3d 871, 874–75 (8th Cir.2007) (quoting *Naucke v. City of Park Hills,* 284 F.3d 923, 927 (8th Cir.2002)). To establish a First Amendment retaliation claim in the student speech context, a plaintiff must show that: "(1) he was engaged in a constitutionally protected activity," (2) the activity was a motivating factor in Defendants' actions and (3) "the [D]efendant[s'] actions would chill a person of ordinary firmness from continuing to engage in the protected activity." *Wolfe v. Fayetteville, Arkansas Sch. Dist.*, 600 F. Supp. 2d 1011, 1021 (W.D. Ark. 2009). The law was sufficiently clear in light of the cited precedent in this Circuit that a school district violates students' First Amendment rights when it retaliates against a student's speech. *See also Minnesota State Coll. Student Ass'n, Inc. v. Cowles*, 620 F. Supp. 3d 835 (D. Minn. 2022), *appeal dismissed,* No. 22-2722, 2023 WL 1931019 (8th Cir. Jan. 13, 2023) (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights, it need not be great in order to be actionable."))

Defendants do not dispute Marcus engaged in constitutionally protected activity, but rather focus on the second and third elements of a First Amendment retaliation claim. (See Filing 11, p. 9, 12-13); *see Gomez v. Allbee,* 134 F. Supp. 3d 1159 (S.D. Iowa 2015) (court considered participation in student newspaper a protected activity); *see also Seemuller v. Fairfax County*

14

*Sch. Bd.,* 878 F.2d 1578, 1583 (4th Cir. 1989); *Gambino v. Fairfax County Sch. Bd.,* 429 F.

Supp. 731, 736 (E.D. Va. 1977) *aff'd,* 564 F.2d 157 (4th Cir. 1977*); Romano v. Harrington*, 725

F. Supp. 687 (E.D.N.Y. 1989). As such, Plaintiff will discuss his allegations supporting the

remaining elements demonstrating that Defendants' actions chilled him from engaging in the

*Viking Saga* and Marcus' engagement in the *Viking Saga* was a motivating factor in Defendants'

conduct.

> **1. Plaintiff Marcus Pennell adequately pleads Defendants' actions of terminating the newspaper class and *Viking Saga* were motivated by Marcus' speech.**

"To prevail in an action for First Amendment retaliation, [the] 'plaintiff must show a

causal connection between a defendant's retaliatory animus and [the plaintiff's] subsequent

injury." *Osborne v. Grussing,* 477 F.3d 1002, 1005 (8th Cir.2007) (quoting *Hartman v.*

*Moore,* 547 U.S. 250 (2006)). "Retaliation need not have been the sole motive, but it must have

been a 'substantial factor' in those decisions." *Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir.

2007) (quoting *Wishnatsky v. Rovner,* 433 F.3d 608, 613 (8th Cir.2006)). "The plaintiff must also

show that the retaliatory motive was a but-for cause of the harm; that is, that the plaintiff was

'singled out' for adverse treatment because of [their] exercise of constitutional rights."

*Kilpatrick*, 499 F.3d at 767.

Defendants' sole basis to dismiss Marcus' claim of First Amendment retaliation relies on

the fact that the retaliatory actions of Defendants took place "after" Marcus graduated. (Filing

11, p. 12). However, "the Eighth Circuit has held the adverse action does not have to occur at the

time the First Amendment activity is occurring." *Green v. City of St. Louis*, 52 F.4th 734, 739

(8th Cir. 2022); *see also Garcia v. City of Trenton,* 348 F.3d 726 (8th Cir. 2003). Here, Marcus

does not have to allege that Defendants' actions of terminating the newspaper class and *Viking*

*Saga* occurred while he was enrolled at GINW. To state otherwise, would completely eliminate the heart of a retaliation claim which at its very essence requires action *after* a plaintiff exercises a protected constitutional right. Finding otherwise would give school districts the green light to retaliate against former students simply because they graduated. *See generally Wolfe,* 600 F. Supp. 2d at 1021.

Plaintiffs' Complaint sufficiently alleges facts to establish that Defendants' actions of terminating the newspaper class and the *Viking Saga* were motivated by Marcus' speech, all of which Defendants fail to address in their Brief. (Filing 1, p. 12, 16-17; *see* Filing 11); *see Iqbal,* 556 U.S. at 678 (Plaintiffs' facts are accepted as true to state a claim for relief that is plausible on its face.) First, Plaintiffs' Complaint describes Marcus' article for the *Viking Saga* while he was enrolled as a student at GINW in April of 2022 as an editorial "on the Florida Parental Rights in Education Act, commonly known as the 'Don't Say Gay' law." (Filing 1, p. 3, 11). The article was eventually published in the June 2022 edition of the *Viking Saga* on May 16, 2022. (Filing 1, p. 12). Then, just three days after Marcus' article was published, on or about May 19, 2022, Defendants announced that the *Viking Saga* would be terminated, and no alternative newspaper class would be offered. (Filing 1, p. 12-13). It is clear from Defendants' e-mails and public statements to the local newspaper, the *Grand Island Independent,* all attached and incorporated into the Complaint, that Marcus' article was a substantial motive in the Defendants' swift decision to terminate the newspaper class and the *Viking Saga.* (Filing 1, p. 13-16; Ex. 8-11). One stark comment by the Defendants' Board members directly relays the retaliatory animus: "[t]here were editorials that were essentially, I guess what I would say, LGBTQ." (Filing 1, Ex. 9). The timing and multitude of statements included in Plaintiffs' Complaint, accepted as true,

16

support an inference that Defendants' decision to terminate the newspaper class and the *Viking Saga* were motivated by Marcus' speech.

> **2.   Plaintiff Marcus Pennell sufficiently pleads Defendants' actions of terminating the newspaper class and *Viking Saga* not only chilled but completely prevented him from engaging in the *Viking Saga.***

The test to determine whether Defendants' actions would "chill a person of ordinary firmness" is not subjective, but rather objective. *Minnesota State Coll. Student Ass'n, Inc. v. Cowles*, No. 22CV00771ECTECW, 2022 WL 3160243, at *4 (D. Minn. Aug. 8, 2022). "The question is not whether the plaintiff [himself] was deterred, [but] [w]hat would a person of 'ordinary firmness' have done in reaction to the [adverse action]? Would he or she have simply ignored [it], or would he or she have been slowed down, at least to some degree?" *Id.* (quoting *Garcia*, 348 F.3d at 729 (these sorts of questions are "usually best left to the judgment of a jury.")) "In some cases, embarrassment, humiliation and emotional distress may be sufficient to support a § 1983 claim." *Naucke*, 284 F.3d at 928.

Plaintiffs' Complaint sufficiently alleges facts to establish that Marcus was chilled and outright prevented from participating in the *Viking Saga*. (Filing 1, p. 12, 16-17). Specifically, Plaintiffs' Complaint describes Defendants' actions prevented him from gaining experience teaching, mentoring, participating as an interviewee for or contributor to the *Viking Saga* staff. (Filing 1, p. 15). Additionally, the Defendants' actions made Marcus feel ashamed and regretful of his speech regarding LGBTQ+ issues and now experiences fear and trauma when speaking publicly about his gender identity or on LGBTQ+ issues through written mediums. (Filing 1, p. 16-17). More specifically, Marcus is hesitant about continuing contact with *Viking Saga* staff or its new faculty advisor—appointed by the Defendants. (Filing 1, p. 17). And even now that Marcus is in college, he experiences anxiety and distress that he will not be welcome as his

17

whole self after experiencing Defendants' actions. (Id). The emotional distress Marcus is

enduring is sufficient to support a First Amendment retaliation claim, particularly, when

considering Marcus faced public retaliation by Defendants, including School Board members

and the Superintendent of the school district he attended—all individuals with power and

authority over him as a high school and then former student. Courts have observed that the

'"inherent power asymmetry between the [school board] and students'" can increase the

likelihood of the chilling effect and discourage students "of similar fortitude and conviction from

exercising [their] free-speech rights." *Cowles,* 620 F. Supp. 3d at 845 (quoting *Arizona Students'*

*Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 869 (9th Cir. 2016)).

Since Marcus has alleged sufficient facts that Defendants terminated the newspaper class

and *Viking Saga* because of Marcus speech and he is now chilled from engaging in protected

speech, the court should deny Defendants' motion to dismiss.

### b. Plaintiff Marcus Pennell sufficiently alleges conduct violating his freedom of speech free of viewpoint discrimination under clearly established law.

Students in our public schools do not "shed their constitutional rights to freedom of

speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist*., 393

U.S. 503, 506 (1969). The Supreme Court has nonetheless recognized that the First

Amendment rights of students in public schools "are not automatically coextensive with the

rights of adults in other settings," *Bethel School District No. 403* v. *Fraser*, 478 U.S. 675, 682

(1986), and must be "applied in light of the special characteristics of the school

environment." *Tinker,* 393 U.S. at 506. Even so, students cannot be punished merely for

expressing their personal views on school grounds –whether "in the cafeteria, or on the playing

field, or on the campus during the authorized hours." *Id.* at 512-13. Typically, the first step in

analyzing a student free speech claim is to conduct a forum analysis. *See Henerey ex rel.*

18

*Henerey v. City of St. Charles*, 200 F.3d 1128, 1132 (8th Cir. 1999). However, because Defendants' actions of terminating the *Viking Saga* and newspaper class were viewpoint-based, there is no need to analyze the nature of the forum. *Child Evangelism Fellowship of Minnesota v. Minneapolis Special Sch. Dist. No. 1*, 690 F.3d 996, 1001 n.1 (8th Cir. 2012) ("Even in a nonpublic forum, restrictions must be viewpoint neutral."); *Burnham v. Ianni*, 119 F.3d 668, 675 (8th Cir. 1997) (same).

It is clearly established that a school engages in viewpoint discrimination when the rationale for its regulation of speech is "the specific motivating ideology or the opinion or perspective of the speaker." *Rosenberger v. Rector & Visitors of Univ. of Virginia,* 515 U.S. 819, 829 (1995) ("When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant."); *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 868 (1982) ("In our system, students may not be regarded as closed-circuit recipients of only that which the State chooses to communicate.... [S]chool officials cannot suppress 'expressions of feeling with which they do not wish to contend." (quoting *Burnside v. Byars*, 363 F.2d 744, 749 (5th Cir. 1966)).

Here, Defendants do not dispute Plaintiff Marcus was discriminated against because of his article related to LGBTQ+ issues as Defendants do not even discuss their reasoning nor offer any reasoning different to that of Plaintiffs for the termination of the newspaper class and *Viking Saga.* (See Filing 11, p. 10-12). Defendants' silence is telling. As established above, Plaintiffs' Complaint sufficiently alleges facts to establish that the rationale for Defendants' actions in terminating the newspaper and *Viking Saga* was based on Plaintiff Marcus' article on LGBTQ+ related issues. The rationale is staringly clear when just the morning after Plaintiff' Marcus article was published, the Defendants' Board President stated in an e-mail dated May 17, 2023,

19

"'I'm sure this is a revenge tactic from the pronoun thing a month or so ago. But I'm going back and forth in the field and I just keep getting more and more upset.'" (Filing 1, p. 13 quoting Ex. 8). By the "pronoun thing", Defendant Board member is referring to Defendants' directive prohibiting the *Viking Saga* student staff from using their chosen name and pronouns reflecting their gender identity. (Filing 1, p. 10-11). He continues, "'I'm hot on this one, because it's not ok. The national media does the same crap and I've had enough of it. No more school paper, in my opinion. You give someone an inch, they take a mile.'" (Filing 1, p. 13, Ex. 8). Unsurprisingly, the newspaper class and the *Viking Saga* were terminated between the dates of May 17, 2022 and May 19, 2022. (Filing 1, p. 13).

Since Plaintiffs have alleged sufficient facts that the newspaper class and the *Viking Saga* were terminated because of Plaintiffs' opinion or perspective, Defendants' Motion to Dismiss should be denied.

> **c. Plaintiffs have alleged sufficient facts supporting their claim of right to receive information under the First Amendment pursuant to 42 U.S.C. § 1983.**

"It is now well established that the Constitution protects the right to receive information and ideas" from a willing speaker. *Stanley v. Georgia,* 394 U.S. 557, 564 (1969); *see also Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council,* 425 U.S. 748, 756 (1976); *Carpenter v. State of S.D.,* 536 F.2d 759, 761 (8th Cir. 1976). Defendants are right that "[t]he First Amendment right to receive information requires only that the government not engage in conduct that impermissibly silences a willing speaker." (Filing 11, p. 14) (citing *Martin v. U.S. E.P.A.,* 271 F. Supp. 2d 38, 48 (D.D.C. 2002)).

As established above, Plaintiffs are willing speakers and Defendants unconstitutionally engaged in viewpoint discrimination and retaliation which in effect silenced them. As such,

Plaintiffs have alleged sufficient facts to establish a claim of right to receive information under the First Amendment and Defendants' motion to dismiss should be denied.

### III.    The Court should deny Defendants' Motion to Dismiss because Plaintiffs sufficiently allege facts to establish liability of Defendant Edwards.

An individual Defendant is liable under 42 U.SC. § 1983 when he is personally involved or directly responsible "for[] a deprivation of [Plaintiffs'] constitutional rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006); *see Wilson v. Cross,* 845 F.2d 163, 165 (8th Cir. 1988). While Defendants as policymakers for a public school are accorded "comprehensive powers…to discharge the important tasks entrusted to them", *Pratt v. Indep. Sch. Dist. No. 831, Forest Lake, Minn.,* 670 F.2d 771, 775 (8th Cir. 1982), judicial review is proper when the adverse action against a student is "'based on a prohibited factor.'" *Gomez*, 134 F. Supp. 3d at 1178; *Wagner v. Jones,* 664 F.3d 259, 269 (8th Cir. 2011).

Defendants only assert Defendant Edwards, the Superintendent of the District at the time of the incidents at issue, is allegedly protected by qualified immunity. (*See* Filing 11, p. 17). However, as alleged and accepted as true at this stage in the proceedings, Defendant Edwards was directly involved in the deprivation of Plaintiffs' rights and is thus liable under 42 U.S.C. § 1983.

First, Defendants have admitted both that Defendant Edwards is an employee of the District and is a state actor, thereby meeting the first element of a 42 U.S.C. § 1983 claim (Decl. Jeffrey Edwards, Filing 12-1); *see Lewis,* 523 U.S. 833 at 841 n. 5. Second, Plaintiffs have alleged, as established above, Defendant Edwards' direct participation in the termination of the newspaper class and *Viking Saga* resulting in the deprivation of Plaintiffs' Free Speech rights. (*See* Filing 1, p. 13-14). Specifically, Plaintiffs allege that Defendant Edwards "covertly decided to terminate the newspaper class and the *Viking Saga* between the dates of May 17, 2022 and

21

May 19, 2022." (Filing 1, p. 13). Moreover, "[o]n or about May 19, 2022, three days after the *Viking Saga* June 2022 edition went to print, Edwards issued a directive and notified GINW journalism advisor of the elimination of" the newspaper class and *Viking Saga"* and further expressed to the GINW staff he was 'unhappy with the last issue's editorial content.'" (Filing 1, p. 14). Lastly, Plaintiffs allege "Defendant Edwards sent a letter to District parents or guardians dated August 31, 2022, stating that 'the newspaper course is currently not included [in the District's] curriculum offerings'" and rejected any alternate proposals to continue the newspaper class, confirming his direct participation in the decision to terminate the newspaper class and *Viking Saga.* (Filing 1, p. 15).

These allegations, accepted as true, establish direct participation by Defendant Edwards in the underlying constitutional violations. Accordingly, the Defendants' motion to dismiss Defendant Edwards should be denied.

### IV. The Court should deny Defendants' Motion to Dismiss because Plaintiffs have sufficiently plead the relief sought, including general and specific damages, as a result of their claims under the First Amendment.

Defendants move to dismiss Plaintiffs' alleged plea for special damages. (Filing 11, p. 18). Plaintiffs request special damages in the form of attorneys' fees pursuant to 42 U.S.C. § 1988 and costs for this action, both of which are specifically stated in the Complaint. (Filing 1, p. 22).

As for Defendants allegation that Plaintiff Marcus is not entitled to "general and specific damages" or that Marcus has not sufficiently alleged those damages, their analysis is incorrect. Marcus "can be awarded [damages] for emotional and mental distress." *Guzman v. W. State Bank of Devils Lake*, 540 F.2d 948, 953 (8th Cir. 1976). "To determine whether a complaint states an actionable claim for damages under the Constitution, [the court] must look to see if (1)

the complaint asserts a constitutionally protected right, and (2) the complaint states a cause of action for damages that asserts that right." *Bishop v. Tice*, 622 F.2d 349, 353 (8th Cir. 1980). Here, as established above, Plaintiffs' Complaint has sufficiently stated an actionable claim when Marcus has sufficiently asserted and stated causes of action for his First Amendment right to free speech free of viewpoint discrimination and retaliation and his right to receive information. (See Filing 1).

Because Plaintiff Marcus has alleged sufficient facts to plead his "general and specific damages", the court should deny Defendants' motion to dismiss.

### V.   The Court should not consider matters outside of the Plaintiffs' Complaint.

The Eighth Circuit views "'matters outside the pleading' as including any written or oral evidence [] in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings." *Gibb*, 958 F.2d at 816. Plaintiffs object to Defendants' Filing No. 12.  The Defendants in their Motion to Dismiss provide no notice of their intent to turn their Motion to Dismiss into a Motion for Summary Judgment. (See Filing 9). *See, e.g. George v. City of St. Louis*, 26 F.3d 55 (8th Cir. 1994) (where defendants actually requested the court consider, in the alternative, their motion as one for summary judgment). FED. R. CIV. P. 12(b) is not permissive.  If matters outside the pleadings are going to be considered, then "all parties must be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *BJC Health  Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 687 (8th Cir. 2003). Here, Plaintiffs have been afforded no notice. Furthermore, Plaintiffs have been given no opportunity to date to seek and obtain discovery, so a motion for summary judgment would be far too premature in this matter. *See Iverson v. Johnson Gas Appliance Co.,* 172 F.3d 524,530

(8th Cir. 1999) ("As a general rule, summary judgment is proper only after the nonmovant has had adequate time for discovery.").

**VI.     Leave to Replead.**

If the Court finds the Plaintiffs' Complaint does not state a claim, then Plaintiffs respectfully request leave to amend. Granting Plaintiffs conditional permission to file for leave would not cause undue delay or bad faith, and it would not prejudice the Defendants. *See Frey*, 44 F.3d at 667.

<u>**CONCLUSION**</u>

For the reasons stated above, Plaintiffs respectfully request the court deny Defendants' motion to dismiss.

Respectfully submitted,

/s/ *Rose Godinez*_____
Rose Godinez, No. 25925
Jane Seu, No. 27452
ACLU OF NEBRASKA
134 S 13th Street, Suite 1010
Lincoln, Nebraska 68508
(402) 476-8091
rgodinez@aclunebraska.org
jseu@aclunebraska.org
*Attorneys for Plaintiffs*

<u>**CERTIFICATE OF COMPLIANCE**</u>

Pursuant to NE Civil Rule 7.1(d)(3), I hereby certify that this brief complies with the applicable word limits. This brief contains 7,365 words, double spaced, in 12-point Times New

Roman font, excluding the Certificate of Compliance and the Certificate of Service. The brief

has been prepared using Microsoft Word Version 16.73 and Adobe Acrobat Professional 17.

/s/ *Rose Godinez*_____

## CERTIFICATE OF SERVICE

I, Rose Godinez, hereby certify that on June 20, 2023, a copy of the foregoing was filed

electronically via the Court's ECF system, which effects service upon counsel of record.

/s/ *Rose Godinez*_____