IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NEBRASKA HIGH SCHOOL PRESS ASSOCIATION, INC., a Nebraska nonprofit corporation; and MARCUS PENNELL, <br><br> Plaintiffs, <br><br> vs. <br><br> NORTHWEST PUBLIC SCHOOL DISTRICT, a Political Subdivision; JEFFREY EDWARDS, in his individual capacity, <br><br> Defendants. | Case No. 4:23-cv-3043 |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Andre R. Barry, #22505
Lily Amare, #25735
Jessica K. Robinson, #27380
Cline Williams Wright
  Johnson & Oldfather, L.L.P.
1900 U.S. Bank Building
233 South13th Street
Lincoln, NE 68508
(402) 474-6900
abarry@clinewilliams.com
lamare@clinewilliams.com
jrobinson@clinewilliams.com

July 5, 2023

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................... 3

II.    ARGUMENT ......................................................................... 4

   A.   The Declaration of Jeffrey Edwards and accompanying exhibits are appropriate to consider in deciding Defendants' Motion to Dismiss. ............................................... 4

   B.   Plaintiffs failed to plead Article III standing. ........................................... 5

      1.   Pennell has not pleaded an injury in fact for purposes of his first and second claims. ....................................................................... 6

      2.   Pennell and the Press Association cannot point to a viable willing speaker ........... 9

      3.   The Press Association's alleged injuries are not redressable. ............................. 11

   C.   Pennell's has not and cannot plausibly allege viewpoint discrimination. ................. 12

   D.   Pennell failed to state a claim of First Amendment retaliation. .............................. 15

   E.   Dr. Edwards is protected by qualified immunity. .................................................... 18

   F.   Plaintiffs have failed to plead special damages, other than attorney's fees under Section 1988. ................................................................... 18

   G.   The Court should deny Plaintiffs' request to replead because it would be futile. .... 19

III.   CONCLUSION ................................................................... 20

Defendants Northwest Public School District, a Political Subdivision ("Grand Island Northwest"), and Jeffrey Edwards, in his individual capacity ("Dr. Edwards"), (collectively, "Defendants"), respectfully submit this Reply Brief in support of their Motion to Dismiss the Complaint.

## I.    INTRODUCTION

While he was a student, Pennell was allowed to express his opinions in the *Viking Saga* without restriction. Plaintiffs do not allege otherwise. The law does not support Pennell's attempt to base a claim on actions that were allegedly taken after his time as a student staff of the *Viking Saga*. Pennell does not allege that Defendants took any adverse action that could plausibly affect him individually now that he has graduated. In addition, Plaintiffs have failed to identify a willing speaker, as required for their right-to receive information claim.

Plaintiffs' attempt to confuse this Court as to whether the *Viking Saga* was paused or terminated falls flat. The Eighth Circuit, in *Brown v. Medtronic, Inc.*, held that, although the court must—

> accept as true a plaintiff's factual allegations for the purpose of analyzing a motion to dismiss pursuant to Rule 12(b)(6) [as the] plaintiff is the master of his own complaint, the Court is not required, even at this preliminary stage, to draw unreasonable inferences from documents the plaintiff makes a part of the complaint. [W]e also are not required to accept as plausible wholly unrealistic assertions. . . .

628 F.3d 451, 461 (8th Cir. 2010). In this case, it is clear Plaintiffs know that the Viking Saga and the Newspaper class were *paused* for a semester. [*See* Filing No. 16, at 11 where Plaintiffs admit that, after the Viking Saga and Newspaper class resumed Defendants "offered the newspaper class and advising position to another teacher."]

Finally, Plaintiffs have failed to address the substance of Dr. Edwards's qualified immunity defense. Plaintiffs' Complaint is subject to dismissal in its entirety with prejudice.

3

## II.     ARGUMENT

**A.     The Declaration of Jeffrey Edwards and accompanying exhibits are appropriate to consider in deciding Defendants' Motion to Dismiss.**

Plaintiffs ignore their "burden of proving the existence of subject matter jurisdiction," *Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019), and instead argue that this Court should not consider the declaration of Dr. Edwards and accompanying exhibits.

It is settled law that courts may consider "some materials that are part of the public record or do not contradict the complaint . . . as well as materials that are necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). "Documents necessarily embraced by the pleadings include those whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Smith v. Cent. Platte Nat. Res. Dist.*, No. 4:14-CV-3230, 2017 WL 6813133, at *2 (D. Neb. Oct. 26, 2017), *aff'd*, 735 F. App'x 227 (8th Cir. 2018).

The information contained in the declaration of Dr. Edwards and accompanying exhibits are public records and do not contradict the allegations set forth in the Complaint. Plaintiffs allege the 2021-22 *Viking Saga* issue was published and allege their claims are based on Defendants' decision to "terminate or pause" the Newspaper class and the *Viking Saga*. [*See* Filing No. 1, ¶¶ 34, 89, 90, & 104.] The existence of the *Viking Saga* issues published to the public during the 2022-23 school year confirms the Newspaper class and the *Viking Saga* were temporarily paused. Moreover, Plaintiffs also allege Pennell was a senior in the 2021-22 school year and assert various allegations with respect to the Viking Saga and the newspaper class. [*See* Filing No. 1, ¶¶ 4 & 44.] The 2021-22 school year calendar confirms and provides the school events calendared in that same year, including the graduation date.

4

Defendants filed a motion to dismiss pursuant to Rule 12(b)(1), in addition to Rule 12(b)(6). Defendants correctly argue that Plaintiffs do not have standing—which is a question of subject matter jurisdiction. The Eighth Circuit has held a court can look to materials "outside the pleadings" in conducting its review. *Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019). There, the court explained—

> Because of the unique nature of the jurisdictional question, it is the court's duty to decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue. As such, if the court's inquiry extends beyond the pleadings, it is not necessary to apply Rule 56 summary judgment standards. Rather, the court may receive evidence via any rational mode of inquiry, and the parties may request an evidentiary hearing. Ultimately, the court must rule upon the jurisdictional issue unless it is so bound up with the merits that a full trial on the merits may be necessary to resolve the issue. If the district court relies on its own determination of disputed factual issues, we review those findings under the clearly erroneous standard.

*Id.* (internal citation marks and quotations omitted) (cleaned up). *See also Am. Fam. Mut. Ins. Co. v. Vein Ctrs. for Excellence, Inc.*, 912 F.3d 1076, 1081 (8th Cir. 2019) (citing *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018) ("[A] motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) raises a factual challenge to the court's jurisdiction, and courts may look to evidence outside the pleadings and make factual findings.").

Because Defendants have filed a motion pursuant to Rule 12(b)(1), and because the items in the Affidavit of Dr. Edwards are matters of public record that may be considered even in connection with a motion to dismiss under Rule 12(b)(6), this Court may receive evidence without converting the motion to dismiss into a motion for summary judgment.

## B. Plaintiffs failed to plead Article III standing.

The Constitution requires that Plaintiffs "clearly . . . allege facts demonstrating each element" of Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016),

*as revised*, (May 24, 2016). They each must identify an injury-in-fact that can fairly be traced to the challenged conduct and seek a remedy likely to redress that injury. *Id.* Plaintiffs have not and cannot do so.

**1.      Pennell has not pleaded an injury in fact for purposes of his first and second claims.**

Pennell cannot plausibly allege an injury-in-fact stemming from actions his former school took after he graduated. While courts have allowed former students to bring § 1983 actions against their former schools in some circumstances, Pennell ignores that these cases dealt with alleged actions that the defendant schools undertook *while the plaintiffs were students*. *See, e.g.*, *Ward v. Polite*, 667 F.3d 727 (6th Cir. 2012) (where Plaintiff sued University regarding its expulsion of her, alleging it was in retaliation for her refusal to counsel homosexual student during counseling practicum); *Axson-Flynn v. Johnson*, 356 F.3d 1277 (10th Cir. 2004) (where Plaintiff, a former student in University's actor training program, sued University over professor's requirement that she use profane language when performing a script in class); *Zamecnik v. Indian Prairie Sch. Dist. No. 204*, 636 F.3d 874, 879 (7th Cir. 2011) (where current and former student plaintiffs alleged defendant school's policy, which had been in effect when former students attended the school, forbidding them from wearing clothing that stated "Be Happy, Not Gay" violated their First Amendment rights).

This is not the case here. There is no dispute that Pennell graduated on May 15, 2022, "before Defendants' actions[.]" [Filing No. 1, ¶ 4; Filing No. 16, at 9.] As a non-student, Pennell was no longer an invitee to the alleged forum—the *Viking Saga* and the Newspaper class. Pennell argues that he had hopes of returning to his former school to mentor other students or to have letters to the editor published in the *Viking Saga*. But he does not dispute that, as a former student, he had no right to do any of these things.

6

In addition, Plaintiffs admit the Newspaper class and *Viking Saga* are limited, designated public forums. [Filing No. 1, ¶ 43, 82.] "A designated public forum is a nonpublic forum the government intentionally opens to express activity for a limited purpose such as use by certain groups or use for discussion of certain subjects." *Bowman v. White,* 444 F.3d 967, 975 (8th Cir. 2006) (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 46 (1983)). More specifically, a "limited designated public forum" "arises where the government opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects." *Id.* (quoting *Make the Road By Walking, Inc. v. Turner,* 378 F.3d 133, 143 (2d Cir. 2004)). Here, the *Viking Saga* was (and continues to be) the official student publication of Grand Island Northwest High School, with the intended purpose of supporting *student* speech without regard to viewpoint. [Filing No. 1, ¶ 43.]

Accordingly, Pennell cannot have a concrete, particularized injury in fact that can fairly be traced to alleged actions *after* Pennell graduated. Such alleged actions could not have chilled his speech in the *Viking Saga*, because Pennell was not a member of the forum at the time. *See Doe v. Hopkinton Pub. Sch.,* 19 F.4th 493, 510–11 (1st Cir. 2021) (citation and quotation marks omitted) ("[A] chill on speech sometimes may be a cognizable injury, but in order to have standing, the plaintiff must be within the class of persons potentially chilled."). Similarly, as a non-student of Grand Island Northwest, Pennell could no longer be considered a "willing speaker" for purposes of a claim for First Amendment Right to Receive Information because he had no right to speak in the forum at issue.

Generally, the "creation and dissemination of information are speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.,* 564 U.S. 552, 570 (2011). However, Plaintiffs misconstrue the Court's opinion in *Sorrell. Sorrell* does not give a

Plaintiff the right to create or distribute information if he is not within the membership of a limited designated public forum.

Pennell's emphasis on his alleged loss of ability to "have continued contact, mentored, guided, served as an interviewee for future articles with the remaining *Viking Saga* staff and prior faculty advisor" similarly lacks the concreteness required to constitute an injury in fact. Pennell offers no allegations that could support a finding that students working on the *Viking Saga* after his graduation would have sought him out as a mentor or interviewee. "Article III does not authorize federal courts to offer legal advice about hazy potentialities." *Simes v. Ark. Judicial Discipline & Disability Comm'n.,* 734 F.3d 830, 835 (8th Cir. 2013).

To succeed on a First Amendment claim, the plaintiff "must present more than allegations of a subjective chill, however, and must allege a specific present objective harm or a threat of specific future harm to establish standing." *Miller v. City of St. Paul,* 823 F.3d 503, 506 (8th Cir. 2016). In other words, "allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Balogh v. Lombardi,* 816 F.3d 536, 542 (8th Cir. 2016) (quoting *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 418 (2013).

Pennell attempts to rely on *Balogh*, but his reliance is misplaced. In *Balogh*, the court found the ACLU's "objectively reasonable fear of legal action" against it was a sufficient injury in fact. *Id.* at 542. Unlike the plaintiff in *Balogh*, Pennell has not pleaded any objectively reasonable fear of any action against him. He has only argued that "there is a direct and credible threat that Defendants could terminate the newspaper class again and not reinstate the physical version of the *Viking Saga*[.]" [Filing No. 16, p. 10.] Even if these allegations were plausible—and they are not—they

would not have any concrete effect on Pennell. Pennell thus lacks standing to assert his claims.

### 2. Pennell and the Press Association cannot point to a viable willing speaker.

Plaintiffs' claim that their right to receive information was violated also cannot survive dismissal. Plaintiffs acknowledge that they must identify a "willing speaker," but failed to do so.

"[T]o prove there is a 'willing speaker,' a party must show at least that but for a challenged regulation of speech, a person would have spoken." *Pa. Family Inst., Inc. v. Black*, 489 F.3d 156, 165 (3d Cir. 2007). "The First Amendment right to receive information requires only that the government not engage in conduct that *impermissibly* silences a willing speaker." *Martin v. U.S. E.P.A.*, 271 F.Supp.2d 38, 48 (D.D.C. 2002) (emphasis added).

Plaintiffs claim that the members of the Press Association, specifically Kirsten Gilliland ("Gilliland"), are "willing speakers." [Filing No. 16, p. 12.] However, Plaintiffs conflate a "willing speaker" with a "willing listener." Here, the only possible "willing speakers" are students of Grand Island Northwest, who are members of the forum at issue, the *Viking Saga*. Plaintiffs do not allege that any students of Grand Island Northwest are members of the Press Association who had their rights infringed upon by the one semester pause of the *Viking Saga.* Because Plaintiffs have not, and cannot identify such a student, they lack an injury in fact. *Pa. Family Inst.*, 489 F.3d at 165 ("The right to receive speech is 'entirely derivative' of the rights of the speaker.").

Plaintiffs attempt to assert that Gilliland is a "willing speaker," arguing that "after Defendants terminated the Newspaper class and *Viking Saga*, Defendants offered the newspaper class and advising position to another teacher, not a member of the NHSPA."

[Filing No. 16, p. 11.] However, Gilliland is not a plaintiff, and, as a non-student, Gilliland did not have a right to speak in the *Viking Saga*.

Further, Plaintiff's attempt to backdoor a claim of First Amendment retaliation based on Gilliland's alleged reassignment should be rejected. As a threshold matter, this cause of action should not be entertained for failure to comply with Fed. R. Civ. P. 8(a)(2). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (Dismissal is appropriate when a complaint lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). Moreover, reassignment is not an adverse employment action for purposes of a First Amendment retaliation claim. "In order to establish a claim for unlawful First Amendment retaliation, a public employee must show that [she] suffered an adverse employment action that was causally connected to [her] participation in a protected activity." *See Meyers v. Starke*, 420 F.3d 738, 744 (8th Cir. 2005) (holding reassignment did not constitute an "adverse employment action" to prove First Amendment retaliation claim).

Finally, to the extent Plaintiffs assert that Press Association members have become "fearful of any similar backlash toward their own publications and restricted and chilled their ability to teach and promote" journalism, such injuries are far from concrete. [Filing No. 16, 11.] As discussed, these members do not work at Grand Island Northwest. Defendants hold no authority over any decisions that would be made at any other educational institutions. Moreover, such an assertion does not overcome Plaintiffs' inability to particularly identify any specific willing speaker who had a First Amendment right to publish material in the *Viking Saga*.

### 3.    The Press Association's alleged injuries are not redressable.

The Press Association's claim also fails because none of the requested relief would sufficiently redress the Press Association's alleged injuries for purposes of establishing standing.

The Press Association has failed to allege any pecuniary harm as a result of the pause in publication of the *Viking Saga*. Moreover, the Press Association's requests for attorney's fees and costs of the action are insufficient to grant the Press Association standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 108 (1998).

In addition, the Press Association does not dispute that as "an incorporated, registered nonprofit corporation in Nebraska," it cannot seek general damages for emotional distress. *HM Hotel Props. V. Peerless Indent. Ins. Co.*, 874 F.Supp.2d 850, 854 (D. Ariz. 2012). The Press Association only argues that it can pursue a § 1983 claim on behalf of its members. However, the relief requested in each of the cases the Press Association cited was not general monetary damages; rather, it was injunctive or declaratory relief. *See ACLU of Minn. V. Tarek ibn Ziyad Acad.*, 788 F.Supp.2d 950, 954 (D. Minn. 2011) (seeking declaratory and injunctive relief); *Colalition for Sensible & Humane Solutions v. Wamser*, 771 F.2d 395, 398 (8th Cir. 1985) ("This is an injury which was 'likely' to be redressed by the declaratory and injunctive relief requested by the Coalition."). A claim by the Press Association seeking general damages on behalf of its members would necessarily "require[] the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Com'n*, 462 U.S. 333, 343 (1977). *See also United Food & Com. Workers Union Loc. 751*, 517 U.S. 544, 546 (1996) (the participation of members "would be required in an action for damages to an association's members, thus suggesting that an association's action for damages running solely to its members would be barred for want of the association's standing to sue."). The Press

11

Association would therefore lack standing to bring a claim for damages on behalf of its members.

This leaves the Press Association with its vague request "[f]or such other relief as the Court deems equitable, just and proper." The Press Association cites *Eastman v. County of Sheridan* to contend that this sufficiently alleges equitable relief. *Eastman v. Cnty. of Sheridan*, No. 707CV5004, 2007 WL 1814214, at *6 (D. Neb. June 21, 2007), *report and recommendation adopted sub nom. Eastman v. Sheridan, Cnty. of*, No. 7:07CV5004, 2007 WL 2068108 (D. Neb. July 16, 2007). In *Eastman*, the defendant sought an order requiring the plaintiff to make the prayer for equitable relief more definite and certain, which the court denied. *Id. Eastman* did not deal with the question of standing.

In this case, the Press Association must show that its alleged injury can be redressed under the specific circumstances of the case. It has failed to carry this burden. The *Viking Saga* is back in circulation. The Newspaper class is being offered. Consequently, "[n]one of the specific items of relief sought" by the Press Association (including the prayer for equitable relief), and none that the court could "envision as 'appropriate' under the general request, would serve to reimburse" the Press Association for the alleged losses caused by the lack of access to the *Viking Saga* for the fall semester of 2022. *Steel Co.*, 523 U.S. at 105–106. Because the Press Association's alleged injuries for its sole claim are not redressable, the claim must be dismissed.

**C.    Pennell has not and cannot plausibly allege viewpoint discrimination.**

Even if Pennell had standing, his claim of viewpoint discrimination would fail on the merits. To state a claim of viewpoint discrimination, Pennell must allege that Defendants targeted "particular views taken by speakers on a subject." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995). The hallmark of a claim

of viewpoint discrimination is that different viewpoints are being treated or regulated differently within a forum.

The cases cited by Pennell reflect this rule. *See, e.g.*, *Child Evangelism Fellowship of Minnesota v. Minneapolis Special Sch. Dist. No. 1*, 690 F.3d 996, 1001 (8th Cir. 2012) ("When the government targets *a particular viewpoint* taken by speakers on a general subject, the First Amendment is violated."); *Burnham v. Ianni*, 119 F.3d 668, 676 (8th Cir. 1997) ("The University was not obligated to create the display case, nor did it have to open the case for use by history department and faculty and students. However, once it chose to open the case, it was prevented from unreasonably distinguishing amount the types of speech it would allow within the forum.").

Pennell does not, and cannot, allege Defendants treated any particular view that he, or anyone else, expressed differently than any other. Pennell admits that he expressed his viewpoint in the June 2022 edition of the *Viking Saga*. He does not, and cannot, allege that the pause in the publication of the *Viking Saga* after he graduated affected the expression of his views, which was complete before he graduated.

Moreover, even if he had been a member of the forum, the pause in the publication of the *Viking Saga* in the first semester of the 2022-23 school year does not constitute viewpoint discrimination because the temporary closure of the forum affected all viewpoints equally. As Defendants set forth in their opening Brief, the State is not required to maintain a forum. *See, e.g.*, *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985); *Straights & Gays for Equal. (SAGE) v. Osseo Area Sch.- Dist. No. 279*, 471 F.3d 908, 913 (8th Cir. 2006).

The Defendants' alleged motivation is not relevant to whether closing a forum is permissible. This is clearly illustrated in *Sons of Confederate Veterans, Virginia Div. v. City of Lexington, Virginia*, 722 F.3d 224, 230–32 (4th Cir. 2013). There, Plaintiffs sought

13

to display flags on utility poles, which were considered designated public forums. Defendants stopped Plaintiffs from hanging flags by enacting an ordinance banning all flag displays. *Id.* The Fourth Circuit made clear that a government body is free to consider viewpoint in deciding whether to close a forum:

> The [Plaintiffs'] primary contention on appeal—that the motive behind the Ordinance dictates its constitutionality—lacks controlling precedent. The Supreme Court's decision in *Hill v. Colorado* illustrates the point, explaining that "the contention that a statute is 'viewpoint based' simply because its enactment was motivated by the conduct of the partisans on one side of a debate is without support." [530 U.S. 703, 724 (2000)]. Relying on *Frisby v. Schultz,* [487 U.S. 474 (1988)], the Court explained that it had, in the past, recognized a picketing ordinance as constitutional that "was obviously enacted in response to the activities of antiabortion protesters who wanted to protest at the home of a particular doctor." *Hill,* 530 U.S. at 725, 120 S. Ct. 2480. The Free Speech Clause only "forbids Congress and ... the States from making laws abridging the freedom of speech—a far different proposition than prohibiting the intent to abridge such freedom." *Grossbaum v. Indianapolis–Marion Cnty. Bldg. Auth.,* 100 F.3d 1287, 1293 (7th Cir.1996) (internal quotation marks omitted). Furthermore, "'[w]e are governed by laws, not by the intentions of legislators.'" *Id.* (quoting *Conroy v. Aniskoff,* 507 U.S. 511, 519, 113 S. Ct. 1562, 123 L.Ed.2d 229 (1993) (Scalia, J., concurring in judgment)).

> The Ordinance has the effect of closing a designated public forum—the perpetual availability of which was never guaranteed—to all private speakers. The City was entitled to listen to the public and to enact ordinances that are constitutional in text and in operation, and that are supported by the electorate. Notably, the Ordinance specifies that it does not "prohibit or curtail individuals from carrying flags in public and/or displaying them on private property." Lexington City Code § 420–205(C) (2011). As a result, all private groups and individuals remain free to express their flag-bound messages in other ways.

> . . .

> The argument that a legislative motive matters—in the nature of a "clean hands" equity contention—does not assist our inquiry here. A government is entitled to close a designated public forum to all speech. Reading a clean-hands requirement into the closure of such a forum is not supported by precedent and could produce an absurd result. For example, the City could be beholden to the [Plaintiffs] and other private groups or individuals (e.g., pro-choice activists, the Ku Klux Klan, the Libertarian Party, etc.) that insisted on hoisting their flags on City-owned standards, notwithstanding that the City would prefer to reserve its equipment purely for government speech. In other words, it appears that the City experimented with private speakers displaying flags on the City's

standards, and that effort turned out to be troublesome. It was entitled, under the controlling principles, to alter that policy.

*Sons of Confederate Veterans*, 722 F.3d at 232.

Plaintiffs cite *Koala v. Khosla*, 931 F.3d 887, 903 (9th Cir. 2019), to argue that the pause and subsequent return of the *Viking Saga* in an online format is impermissible. However, the court in *Koala* dealt with a "case in which the government has been allowed to define a forum one way at its inception, then redefine it in response to speech it deems offensive and *close only the portion of the forum* where that speech occurs." *Id.* at 903 (emphasis added). This is not the case here. When the *Viking Saga* was paused for the first semester of the 2022-23 school year, it was paused for everyone, and when it returned in an online capacity, it was online for everyone. Such a universally applicable action cannot constitute viewpoint discrimination in violation of the First Amendment.

## D.   Pennell failed to state a claim of First Amendment retaliation.

Even if Pennell had standing, his claim that Defendants retaliated against him would also fail. To state a claim of retaliation, Pennell must show that Defendants "took adverse action *against him* that would chill a person of ordinary firmness from continuing the activity." *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004) (emphasis added). Plaintiffs themselves recognize that Pennell "must . . . show . . . that the [he] was 'singled out' for adverse treatment because of [his] exercise of constitutional rights." *Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir. 2007). [Filing No. 16, p. 15.]

Pennell does not allege (nor can he) that Defendants took any action against him. Pennell claims that because of Defendants alleged retaliation, he was "outright prevented from participating in the *Viking Saga*." [Filing No. 16, at 17.] Pennell cannot participate as a student writer for the *Viking Saga* because of the obvious reason that

15

he is no longer a student.  Plaintiffs admit that Pennell "graduated before Defendants' actions." [Filing No. 16, p. 9.]

Contrary to Pennell's argument, the fact that he graduated is not immaterial. It is correct that the Eighth Circuit in *Green v. City of St. Louis* held that the "the adverse action does not have to occur at the time the First Amendment activity is occurring." *Green v. City of St. Louis*, 52 F.4th 734, 739 (8th Cir. 2022). However, although the adverse action can occur subsequent to the First Amendment activity occurring, the adverse action must still be taken *against the Plaintiff*. Even in the cases cited by Plaintiffs, the plaintiffs themselves were directly retaliated against. *See, e.g.*, *Green*, 52 F.4th at 738–39 (alleging Defendants deployed tear gas against Plaintiff after she publicly protested); *Garcia v. City of Trenton*, 348 F.3d 726, 728 (8th Cir. 2003) (alleging Defendants retaliatorily issued parking tickets to Plaintiff after she publicly complained about city's failure to enforce ordinance); *Wolf v. Fayetteville, Ark. Sch. Dist.*, 600 FSupp.2d 1011, 1021 (W.D. Ark. 2009) (alleging Defendants told student "not to cry 'like a little baby'" in response to harassment of student, made threats against student, and released student's records to the public after *The New York Times* ran a story about him). Unlike these plaintiffs, the alleged retaliatory action of pausing the publication of the *Viking Saga* occurred after Pennell had graduated and was therefore not taken against him.

Even if the administration's actions could be plausibly interpreted as actions against Pennell—and they cannot be—pausing the *Viking Saga* for one semester would not "chill a person of ordinary firmness from" speaking. *Peterson*, 754 F.3d at 602. Plaintiffs do not cite any case in which a court has found a pause in publication of a school newspaper, or any comparable action, to be such that they would chill a person of ordinary firmness from speaking. Instead, Plaintiffs cite *Nauck v. City of Park Hills*,

16

284 F.3d 923, 928 (8th Cir. 2002) for the proposition that "[i]n some cases, embarrassment, humiliation and emotional distress may be sufficient to support a § 1983 claim."

The holding in *Nauck* does not help Pennell, and in fact demonstrates that much more than the Defendants' alleged actions in this case is required to meet the objective standard of what would chill a person of ordinary firmness from speaking. In *Nauck*, the plaintiffs alleged that defendants retaliated against her by "(1) conducting a public audit of the fire department's ladies' auxiliary while she was President, (2) publicly scolding her at City Council meetings, (3) engaging in public name calling, (4) posting a picture of her home in a public place with the caption 'The Naucke House. Donations Needed.', and (5) circulating a letter suggesting Link was the father of one of her children." The Eighth Circuit held that these actions were **insufficient** to "chill a person of ordinary firmness from continuing . . . in that [constitutionally protected] activity." *Id.* Pausing the publication of the school newspaper after a student has graduated from the school does not remotely approach the level of behavior that was held to be insufficient in *Nauck*.

Plaintiffs' allegation that Defendants' behavior is more chilling because of their authority over him as a former student is similarly unpersuasive. Pennell points to the recognized "inherent power asymmetry between [a University Board of Regents] and students" as increasing the likelihood that students will be chilled from exercising free-speech rights. *Minnesota State College Student Ass'n, Inc. v. Cowles*, 620 F.Supp.3d 835 (D. Minn. 2022) (quoting *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 869 (9th Cir. 2016)). However, unlike the plaintiffs in *Cowles* or *Arizona Students Association*, Pennell was no longer a student at Northwest when the alleged retaliatory

17

action of pausing the *Viking Saga* occurred. After graduation, they had no power over his life or actions.

**E.     Dr. Edwards is protected by qualified immunity.**

Plaintiffs utterly failed to address the crux of Defendants' argument in support of their position that Dr. Edwards is entitled to qualified immunity, *i.e.*, that Plaintiffs failed to state a claim for violation of "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *See Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013–14 (8th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Instead, Plaintiffs argue Dr. Edwards is not entitled to qualified immunity because he was "personally involved or directly responsible" for the alleged deprivation of Plaintiffs' rights—an argument that was not raised by the Defendants. [Filing No. 16, at 21–22.] Such generalized argument is insufficient because a "clearly established right" is "not defined at a high level of generality." *Estate of Walker v. Wallace*, 881 F.3d 1056, 1060 (8th Cir. 2018). Rather, Plaintiffs were required to plead that they—a former student and a collection of school journalism teachers—had a clearly established right to the continuous operation of and access to the Newspaper class and *Viking Saga*. Plaintiffs do not point to even one case to fulfill their obligation. Accordingly, Dr. Edwards, who had "broad discretion in the management of school affairs," is entitled to qualified immunity. *See Board of Educ., Island Trees Union Free School Dist. No. 26 v. Pico*, 457 U.S. 853, 863 (1982).

**F.     Plaintiffs have failed to plead special damages, other than attorney's fees under Section 1988.**

Plaintiffs concede that the only specifically alleged "special damages" are attorneys' fees and costs for the action. [Filing No. 16, 22.] However, Plaintiffs seem to

argue their plea for attorney's fees and costs pursuant to 42 U.S.C. §,1988[1] is sufficient for purposes of their prayer for "specific damages."[2] In the Complaint, Plaintiffs prayed, separately, for "General and Specific Damages," and for attorney's fees pursuant to 42 U.S.C. § 1988. [Filing No. at ¶¶ 106(a) & (b).] Accordingly, Plaintiffs cannot skirt the pleading requirement in Fed. R. Civ. P. 9(g) and are required to plead sufficient facts for their separate prayer for "specific damages."

**G.    The Court should deny Plaintiffs' request to replead because it would be futile.**

In their Brief in Opposition, Plaintiffs' perfunctorily request leave to amend their Complaint if the Court finds that the Complaint does not sufficiently state a claim. However, Plaintiffs' request does not include a proposed amended complaint, in violation of the requirement under District of Nebraska Local Rule 15.1(a). Moreover, courts in this District and in the Eighth Circuit have denied perfunctory briefing requests and dismissed claims without allowing a plaintiff another "bite at the apple." *See, e.g., Ryan v. Ryan,* 889 F.3d 499, 504 n. 4 (8th Cir. 2018) (upholding district court's denial of

---

[1] Plaintiffs' request for Attorney's Fees and Costs under 42 U.S.C. §, 1988 is a nonissue because 42 U.S.C.A. § 1988 provides: "In any action or proceeding to enforce a provision of sections . . . 1983 . . . , the court, in its discretion, may allow the ***prevailing party***, other than the United States, a reasonable attorney's fee as part of the costs, . . . ." (emphasis added.) To be a prevailing party entitled to recover attorney's fees, the party must first establish actual, recoverable damages. *See in Lefemine v. Wideman,* 133 S. Ct. 9, 11 (2012) (per curiam) (quoting *Farrar v. Hobby,* 506 U.S. 103, 110, 113 S. Ct. 566, 572, 121 L. Ed. 2d 494 (1992)) (holding a plaintiff prevails "'when actual relief on the merits of [the plaintiff's] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'"); *Parada v. Anoka Cnty.,* 54 F.4th 1016, 1023 (8th Cir. 2022) ("To receive attorney fees, [the plaintiff] had to be a 'prevailing party,' which includes those who have 'succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'"); *Patterson v. City of Omaha,* No. 8:11CV128, 2013 WL 322173, at *1 (D. Neb. Jan. 28, 2013) (quoting *Farrar v. Hobby,* 506 U.S. 103, 110, 113 S. Ct. 566, 572, 121 L. Ed. 2d 494 (1992)) (quoting *Farrar*). As discussed in the opening Brief and this Brief, Plaintiffs cannot establish Article III standing—and, to the extent Plaintiff is attempting to argue their plea for attorney's fees is sufficient for purposes of injury in fact, it is not.

Plaintiff's "request made at the end of her memorandum in opposition to Defendants' motion to dismiss" requesting leave to amend); *Dudek v. Prudential Securities, Inc.*, 295 F.3d 875, 880 (8th Cir. 2002) (finding district court did not abuse its discretion in denying leave to file an amended complaint when plaintiff first raised the issue at the end of their brief); *Doe v. Bd. of Regents of Univ. of Nebraska*, 509 F. Supp. 3d 1133, 1145 (D. Neb. 2020) (denying a plaintiff's informal request for leave in her response brief because she failed to comply with the applicable rules and to explain how amending will cure the "substantial deficiencies."). In addition, Pennell's status as a former student and the *Viking Saga*'s continued publication would make any attempt to amend futile. Therefore, the Court should deny Plaintiffs' leave to file an Amended Complaint.

## III.   CONCLUSION

For the foregoing reasons, as well as those asserted in Defendants' opening Brief, Defendants respectfully request that the Court grant their Motion to Dismiss and enter an Order dismissing Plaintiffs' Complaint in its entirety and with prejudice.

Dated July 5, 2023.

NORTHWEST PUBLIC SCHOOL
DISTRICT, a Political Subdivision;
JEFFREY EDWARDS, in his individual
capacity, Defendants

By:    /s/ Lily Amare
       Andre R. Barry, #22505
       Lily Amare, #25735
       Jessica Robinson, #27380
       Cline Williams Wright
        Johnson & Oldfather, L.L.P.
       1900 U.S. Bank Building
       233 South13th Street
       Lincoln, NE 68508
       (402) 474-6900
       abarry@clinewilliams.com
       lamare@clinewilliams.com
       jrobinson@clinewilliams.com

## CERTFICATE OF COMPLIANCE

I, Lily Amare, hereby certify that this Brief complies with the limits set forth in NECivR 7.1(d). Further, based on the Word Count function of Microsoft Word 2013 word processing software, applied to include all text, including the caption, headings, footnotes, and quotations, I certify this Brief contains 6,308 words.

s/ Lily Amare
Lily Amare

## CERTIFICATE OF SERVICE

I, Lily Amare, hereby certify that on July 5, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

s/ Lily Amare
Lily Amare

4883-9851-0443, v. 4